**Rachelle WILLIAMS, Appellant,**

v.

**GIANT EAGLE MARKETS, INC.,
a corporation.**

**Rachelle WILLIAMS**

v.

**GIANT EAGLE MARKETS, INC.,
a corporation.**

**Appeal of Rachelle WILLIAMS, Plaintiff, and her counsel, Conrad A. Johnson, Esquire and the Law Firm, Law Office of Byrd R. Brown.**

**Nos. 88–3792, 89–3394.**

United States Court of Appeals,
Third Circuit.

No. 88–3792 Argued April 11, 1989.

No. 89–3394 Submitted June 14, 1989.

Decided Aug. 28, 1989.

Rehearing Denied Sept. 26, 1989.

Conrad A. Johnson (argued), Law Offices of Byrd R. Brown, Pittsburgh, Pa., for appellant.

Lori E. Wilson (argued), Bernard D. Marcus, Marcus & Shapira, Pittsburgh, Pa., for appellee.

Before HIGGINBOTHAM, STAPLETON and ROSENN, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

This is an appeal from the final judgment of the district court finding against Appellant's claims of racial and sexual discrimination. This is also an appeal from an order of the district court granting the Defendant's motion for the imposition of attorneys' fees as a sanction against the Appellant and her counsel. We will affirm the district court's judgment on the merits of the case. We will reverse, however, the court's order awarding attorneys' fees.

### I.

The following facts are based on the district court's findings and are not seriously in contention. The Appellant, Rachelle Williams ("Williams"),[1] a black woman, was employed by Giant Eagle Markets, Inc. ("Giant Eagle") from June 19, 1978 until the effective date of her discharge on May 6, 1984. Williams began at Giant Eagle as a bagger, but was later promoted by seniority to the position of cashier on December 17, 1978. As a cashier, Williams performed her job in a capable and competent manner.

On May 6, 1984, Williams was on duty at Giant Eagle when an argument arose between a white customer and another cashier, Laura Hendrix ("Hendrix"). During the dispute, the customer began shouting racial epithets at Hendrix, at which point she called for the assistance of William Lichius ("Lichius"), Giant Eagle's store manager. Lichius came out of his office and, in an effort to defuse the situation, placed his hand over Hendrix's mouth to muffle her remarks to the customer.

After the customer had left Giant Eagle, Williams made the comment that cashiers did not have to take such abuse from either customers or Lichius, to which he responded that if Williams did not approve of Giant Eagle's policy or his actions, "she knew where the door was." This exchange led to a heated and boisterous argument between Williams and Lichius. When Lichius requested that they talk privately, Williams refused to discuss the matter without a representative of her union being present.

After repeatedly refusing to talk to Lichius, Williams was told to punch out on her time card and leave the store, but she ignored these directions. Thereafter, Williams received a telephone call from Raymond Huber, a Vice-President of Giant Eagle, telling her to follow Lichius's orders. When Williams also ignored Huber's directive, Lichius marked the time as 3:30 PM on her card and removed her from the work schedule. At this point, Williams left the store but remained outside until 4:59 when she came back in and punched out.

Subsequently, Williams filed a grievance pursuant to her union's established procedure. After exhausting all avenues of the grievance procedure available to her,[2] Williams then proceeded to file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that she was discharged from employment on the basis of her race and sex. She also alleged in her charge that Giant Eagle's justification for her discharge was pretextual because white and male employees who had engaged in similar acts of insubordination had not been terminated.

1. The Appellant was married after the commencement of this litigation and now uses the name Rachelle Williams Morris.

2. The district court found that Williams had moved through all four procedural stages available to her. With respect to the fifth and final step, which would have been labor arbitration, the court found no evidence that the union, or anyone on behalf of the union, had sought to exercise this option.

Following the EEOC's issuance of a right to sue letter on June 13, 1985, Williams commenced this action on September 6, 1985, in the United States District Court for the Western District of Pennsylvania, claiming that she was unlawfully terminated from her employment with Giant Eagle on the basis of her race and sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1982) ("Title VII"), and the Civil Rights Act of 1870, 42 U.S.C. § 1981 (1982) ("§ 1981").

A non-jury trial was held before the Honorable Robert E. DeMascio,[3] on August 1, 1988. On the following day, August 2, the district court issued its findings of fact and concluded that Williams was not discharged as a result of any racial or sexual discrimination, but was properly terminated for insubordination. Thereafter, on September 27, 1988, the district court granted Giant Eagle's motion for attorney fees pursuant to 28 U.S.C. § 1927 ("§ 1927"), finding that Williams and her counsel, Conrad A. Johnson ("Johnson"), had pursued her claim in bad faith since they knew or should have known that insubordination caused her discharge.[4] On October 26, Williams filed appeal No. 88–3716 from that judgment. After the district court issued its final order on October 31, 1988, directing that judgment be entered with prejudice in favor of Giant Eagle, Williams

filed appeal No. 88–3792 on November 29, 1988.

We remanded appeal No. 88–3716 since the district court had failed to set forth its judgment on a separate document,[5] as mandated by Fed.R.Civ.P. 58. The court accordingly entered a proper judgment order on June 6, 1989, awarding Giant Eagle $4,118.75 in attorneys' fees, to be paid by Williams and Johnson, jointly and severally, pursuant to § 1927. On June 12, 1989, Williams and Johnson filed appeal No. 89–3394 from that judgment. We have consolidated appeal No. 88–3792, which was held *curia advisari vult,* with appeal No. 89–3394 for disposition.[6] Our jurisdictional predicate is 28 U.S.C. § 1291 (1982).

## II.

With respect to the appeal from the district court's judgment on the merits, Williams argues that the district court committed trial errors that substantially prejudiced her case. Her first contention is that the district court improperly used the findings of fact in another case in its determination of the merits of her claim. Her second contention is that the district court impermissibly limited the scope of Johnson's cross-examination of Giant Eagle's witnesses. We review the district court's evidentiary rulings for abuse of discretion. *Stich v. United States,* 730 F.2d 115, 117

---

**3.** Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

**4.** The court awarded Giant Eagle $4,118.75 in attorneys' fees, of which $2,100 was awarded for time spent at trial and $2,018.75 was awarded for trial preparation time.

**5.** With respect to appeal No. 88–3716, we note that Williams' counsel, Conrad A. Johnson, was not named in the notice of appeal, and ordinarily would have been adjudged as having failed to file a timely appeal. *See Torres v. Oakland Scavenger Co.,* —— U.S. ——, 108 S.Ct. 2405, 2407–09, 101 L.Ed.2d 285 (1988). However, because the district court had failed to set forth its judgment on a separate document pursuant to Fed.R.Civ.P. 58, the 30–day time period for filing a notice of appeal was never technically commenced. Accordingly, Johnson could not be time-barred from appealing. *See United States v. Indrelunas,* 411 U.S. 216, 221–22, 93 S.Ct. 1562, 1564–65, 36 L.Ed.2d 202 (1973) (sepa-

rate document provision of Rule 58 is applied "mechanically" in determining whether an appeal is timely).

**6.** We recognize that the appeal in 89–3394 has not been briefed, but, except for the form of the judgment below, it appears to cover the same issues which were briefed in the earlier appeals. If, after reviewing this opinion, any counsel desires to brief separately the issues in 89–3394, we will set up a briefing schedule upon request. However, at some point there should be a realistic appraisal by all counsel as to who benefits from further litigation of this matter. In view of the fact that in this appeal appellants Williams and Johnson receive a favorable judgment on the attorneys' fees issue, we assume that any subsequent appeals by them concerning this issue are moot. To the extent that Williams does not get a reversal of the judgment below as to the merits of her claim, we can not imagine any factual or legal situation that would change the result by further briefing.

(3d Cir.), *cert. denied,* 469 U.S. 917, 105 S.Ct. 294, 83 L.Ed.2d 229 (1984).

### A.

■ As to Williams' first contention, she claims that the district court abused its discretion by improperly relying upon the findings of fact in a separate case, *Robinson v. Giant Eagle Markets, Inc.,* No. 85–1082, slip op. (W.D.Pa. May 19, 1988), *aff'd,* 866 F.2d 1412 (3d Cir.1988). In that case, Williams had been a witness on behalf of the plaintiff, Barbara Robinson, at a trial conducted by the Honorable William Standish. Judge Standish had found that Williams had been removed from her work schedule on May 6, 1984 for refusing to follow a directive of her supervisor. Williams contends that the district court used the findings of the *Robinson* case in reaching its conclusion that her termination resulted from her insubordination. Our review of the record in this case, however, indicates that the district court was not influenced by the findings of the *Robinson* case.

At the start of trial, Johnson objected to the filing of Giant Eagle's motion for attorneys' fees out of concern that Judge Standish's findings in *Robinson,* as discussed in Giant Eagle's brief in support of the motion, might prejudice the court against his client. The court specifically addressed Johnson's concern:

> THE COURT: I assure you that the motion for Attorneys' Fees does not influence the Court one way or another. I do not intend to look at it or read it until the conclusion of this case and then in that event, I will decide whether costs are warranted.
>
> MR. JOHNSON: Thank You, Your Honor.

Trial Transcript at 6, *reprinted in* Appellee's Supplemental Appendix at 33. We find nothing in the record before us to suggest that the district court reneged on its promise not to consider the *Robinson* findings in deciding the merits of this case. Indeed, Williams concedes in her brief that the district court's only consideration of the *Robinson* findings is found in its discussion of attorneys' fees. *See* Brief for Appellant at 15.

### B.

■ Williams' second contention is equally without merit. She first argues that the district court improperly limited the scope of Johnson's cross-examination of Hendrix, who was ironically a critical witness for Giant Eagle,[7] by denying Johnson the right to impeach Hendrix's credibility. The following cross-examination occurred at trial:

Q. Were you ultimately fired from Giant Eagle?

A. No, I resigned to collect unemployment and get work reference from Giant Eagle.

. . . .

Q. So in 1986, you resigned and you collected your unemployment?

A. Yes, I collected my unemployment and used Giant Eagle as a job reference.

. . . .

Q. Well, had you any disciplinary incident before that time that led you to resign?

A. Yes, I had an incident.

Q. What was the incident?

A. They tried to accuse me of taking $20.

. . . .

Q. You were taken off the schedule and then you were given the option to resign?

A. Or be terminated.

Q. So you just resigned and then you were allowed—Giant Eagle did not contest your right to unemployment?

A. No.

---

**7.** Hendrix testified that she had not been offended by Lichius covering her mouth during the confrontation she had with the customer. She further testified that Lichius treated equally all employees, regardless of their race or sex. The district court found that "Hendrix was not only a credible witness but also completely refuted the testimony of the two witnesses presented by the plaintiff." Findings of Fact at 17, *reprinted in* Appellant's Appendix at 42.

Q. When you reported to unemployment, what was the reason you gave to unemployment why you were not working?

MR. MARCUS: [O]bjection on the basis of relevance[.]

MR. JOHNSON: It goes to bias, Your Honor.

THE COURT: You objected a little too soon. What is the question?

*BY MR. JOHNSON*

Q. When you went to the Unemployment Compensation Board, what was the reason you gave as to why you separated from your employment with Giant Eagle?

THE COURT: Objection sustained.

Trial Transcript at 163–65, *reprinted in* Appellant's Appendix ("App.") at 188–90.

Williams contends that because the Pennsylvania Unemployment Compensation Act does not permit an employee who voluntarily resigns from collecting benefits,[8] the district court's sustaining of Giant Eagle's objection "prevented [Johnson] from challenging Ms. Hendrix's credibility to determine whether or not the witness testified on behalf of [Giant Eagle] to secure unemployment compensation or employment references, or to determine whether there was an agreement between her and [Giant Eagle] concerning receipt of unemployment benefits and/or favorable employment references." Brief for Appellant at 17–18.

We see no basis for this contention since Johnson's cross examination clearly brought forth sufficient evidence to raise in the mind of the trier of fact the question of whether Hendrix possessed a motive or bias for testifying. This evidence consisted of Hendrix's testimony that Giant Eagle was aware that Hendrix was collecting unemployment benefits although she had voluntarily resigned from her position at Giant Eagle. Therefore, the district court was within its discretion to exclude additional testimony on this same point that would merely have been cumulative. *See United States v. Lehr,* 562 F.Supp. 366,

375 (E.D.Pa.1983) (district court's exclusion of evidence relevant to bias or motive to testify does not require reversal when the jury possesses sufficient information to make a discriminating appraisal of the witness' possible motives for testifying falsely in favor of the government), *aff'd,* 727 F.2d 1100 (3d Cir.1984).

■ Williams next argues that the district court abused its discretion by limiting Johnson's cross-examination of John Sobocinski ("Sobocinski"), a white male employee of Giant Eagle, about his acts of insubordination. Williams contends that this alleged trial error merits reversal since proof that Giant Eagle disciplined its white employees less severely for insubordination than it did its black employees was critical to her case. The district court's conduct with respect to limiting Johnson's cross-examination is governed by Fed.R.Evid. 611(b), which prescribes that

[c]ross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination.

In this case, Sobocinski was called to testify by Giant Eagle as to the authenticity of his signed statement taken May 6, 1984, concerning the argument he had witnessed between Williams and Lichius. Upon cross-examination, Johnson sought to expand the scope of the direct examination by questioning Sobocinski as to whether Giant Eagle had ever charged him with insubordination. Based upon our understanding of Rule 611(b), the district court did not act improperly in sustaining Giant Eagle's counsel's objection to such questioning on grounds of relevance. This case is at the opposite end of the spectrum from *Lis v. Robert Packer Hospital,* 579 F.2d 819, 822–23 (3d Cir.), *cert. denied,* 439 U.S. 955, 99 S.Ct. 354, 58 L.Ed.2d 346 (1978), where a district court abused its discretion by permitting cross-examination to go be-

---

**8.** 43 Pa.Stat. Ann. § 802(b)(1) (Purdon 1988) states in relevant part that an employee is ineligible for unemployment compensation if "his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature...."

yond the scope of the direct examination in every instance. Here, the trial judge rigidly confined cross-examination to the precise issues covered on direct examination.

While we agree with Williams that evidence of a white male employee being treated less severely than she for acts of insubordination would demonstrate that Giant Eagle's asserted justification for her dismissal was pretextual, the district court's action did not preclude her from calling Sobocinski to testify in her case-in-chief. We were careful in *Lis* "to distinguish between cross examination beyond the scope of direct examination and the act of summoning a witness for one side to become a witness for the other." 579 F.2d at 823. Williams could have sought to call Sobocinski as a witness and to question him directly about his insubordinate conduct. She chose, however, not to exercise this option.

The instant case exemplifies the broad discretion given to the trial judge. While another judge may have been less stringent in limiting counsel's cross-examination, we do not find that the trial judge's rulings in this case rise to the level of reversible error. Since the district court did not abuse its discretion with respect to its evidentiary rulings, we will affirm the district court's judgment on the merits.[9]

### III.

Williams and Johnson jointly appeal from the district court's order awarding attorneys fees to Giant Eagle pursuant to § 1927. They raise two critical issues for our consideration. First, we must determine whether the district court erred in its interpretation of § 1927 by applying that statute against Williams. We have plenary review over this issue. *See Chrysler Credit Corp. v. First Nat'l Bank and Trust Co.,* 746 F.2d 200, 202 (3d Cir.1984). Second, we must decide whether the district court erred in imposing fees against Johnson on the basis that he "knew or should have known" that Williams' acts of insub-

ordination precluded her prevailing on the merits of her claim. We review the district court's factual finding of bad faith on the part of Johnson under the clearly erroneous standard. *See Baker Industries, Inc. v. Cerberus, Ltd.,* 764 F.2d 204, 209–10 (3d Cir.1985); *Perichak v. Int'l Union of Electrical Radio & Machine Workers, Local 610,* 715 F.2d 78, 79 (3d Cir.1983).

### A.

▮ We find that the district court's imposition of attorneys' fees against Williams under § 1927 constitutes error as a matter of law. That statute explicitly provides that

> *[a]ny attorney or other person admitted to conduct cases* in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927 (1982) (emphasis added). Therefore, Williams, as a litigant in this action, was not subject to suit under § 1927. As we have previously noted, "by its terms [§ 1927] is not directed to parties." *Gaiardo v. Ethyl Corp.,* 835 F.2d 479, 484 (3d Cir.1987).

The district court rested its decision to impose attorneys' fees against Williams and her counsel solely upon § 1927. Giant Eagle contends that the court had the inherent power to hold Williams liable. In *Alyeska Pipeline Svc. Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), the Supreme Court acknowledged the "inherent power" of the courts to "assess attorneys' fees ... when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons....'" *Id.* at 258–59, 95 S.Ct. at 1622 (quoting *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.,* 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974)). In this case, however,

---

9. We do not decide whether there is sufficient evidence of record to support the district court's finding that Williams was dismissed for insub-

ordination, since Williams does not raise this contention in her appeal from the district court's judgment on the merits.

the court chose not to exercise its inherent authority, but instead relied exclusively upon § 1927.[10] Since that statute does not grant a district court the authority to impose liability against the litigant, we conclude that the court's imposition of sanctions against Williams was improper.

### B.

■ We now address whether the district court properly imposed attorneys' fees against Johnson pursuant to § 1927. While that statute grants authority to the courts to impose sanctions for misconduct by attorneys, it is a power which the "courts should exercise only in instances of a serious and studied disregard for the orderly process of justice." *Overnite Transp. Co. v. Chicago Industrial Tire Co.*, 697 F.2d 789, 795 (7th Cir.1983) (citation omitted). Therefore, before a court can order the imposition of attorneys' fees under § 1927, it must find willful bad faith on the part of the offending attorney. *Baker v. Cerberus, Ltd.*, 764 F.2d at 208–209.

■ In its first finding of bad faith on the part of Johnson, the district court determined that "[Johnson] knew or should have known that plaintiff's insubordinate conduct caused her discharge and not her race. Most importantly, ... [Johnson] knew or should have known ... that he could not prove a *prima facie* case under Title VII or § 1981." Memorandum Opinion at 4–5, *reprinted in* Appellant's App. at 66–67.

With respect to Williams' claim of racial and sexual discrimination brought under § 1981, we note that the Supreme Court has curtailed the availability of that statute to victims of discrimination at the workplace. In *Patterson v. McLean Credit Union*, — U.S. —, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), the Court rationalized that "[s]ection 1981 cannot be construed as a general proscription of racial discrimination in all aspects of contract relations, for it expressly prohibits discrimination only in

the making and enforcement of contracts." *Id.* 109 S.Ct. at 2372. For instances of racial discrimination occurring after parties enter into a contract, the Court held that such conduct "is actionable under Title VII's prohibition against discrimination in the 'terms, conditions, or privileges of employment.'" *Id.* at 2374. Since Williams brought her suit under both Title VII and § 1981, we will examine the legitimacy of her claims pursuant to the former statute, and avoid the difficult task of ascertaining whether any aspects of her claim fall within *Patterson's* narrow class of actionable conduct under § 1981.

In a Title VII disparate treatment action, a plaintiff must first establish a *prima facie* case of discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *see also Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253–54, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981) (refining *McDonnell Douglas*). In the context of the present action, Williams had only to establish a *prima facie* case by showing (1) that she was a member of the protected class; (2) that she satisfied the normal requirements of the job she held; and (3) that she was discharged from her position of employment. The Supreme Court has recently repeated that "the burden [of establishing a *prima facie* case] is not onerous." *Patterson*, 109 S.Ct. at 2378; *see also Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093.

Nevertheless, the district court held that Williams had not set forth a *prima facie* case on account of her insubordinate conduct. The court's reasoning was that Williams had failed to satisfy the normal requirements of her job because "[e]mployees who object to management's orders must obey these orders first and then pursue a union grievance...." Memorandum Opinion at 5, *reprinted in* Appellant's App. at 67. We find this reasoning untenable since disproving insubordination is not part of a plaintiff's *prima facie* case. *See*

---

**10.** In contrast, the district court in *Campana v. Muir*, 615 F.Supp. 871, 873–74 (M.D.Pa.1985), *aff'd*, 786 F.2d 188 (3d Cir.1986), utilized both

§ 1927 and its inherent authority in its assessment of attorneys' fees against Campana and his counsel.

*Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1253–54 (8th Cir.1981).[11] Since Williams' acts of insubordination did not result in her failure to establish a *prima facie* case of employment discrimination, we conclude that the district court erred in finding that Johnson brought this suit in bad faith on that basis.

The second ground advanced by the district court for imposing sanctions against Johnson was that, "even with a *prima facie* case assumed, counsel knew or should have known that [the] plaintiff could not establish that her insubordination was merely a pretext for plaintiff's alleged discriminatory discharge." Memorandum Opinion at 7, *reprinted in* Appellant's App. at 69.

What the district court overlooks in its analysis is the fact that, while Johnson may have known that Williams' acts of insubordination constituted legitimate grounds for Giant Eagle's decision to terminate her employment, he also knew that such a defense was challengeable. Under the *McDonnell Douglas/Burdine* framework,

> [f]irst, the plaintiff has the burden of proving by a preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's [discharge]." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Burdine,* 450 U.S. at 252–53, 101 S.Ct. at 1093 (citations omitted).

The opportunity, and thus the ultimate burden, either to prove that a discriminatory reason more likely than not motivated the employer's conduct, or to show that the employer's proffered explanation is unworthy of credence, lies with the plaintiff. While the Supreme Court's jurisprudence in the Title VII area has experienced change, no shadow has been cast on the *McDonnell Douglas/Burdine* allocation of burdens. *See Price Waterhouse v. Hopkins,* — U.S. —, 109 S.Ct. 1775, 1788, 104 L.Ed.2d 268 (1989) (where there is evidence that an employer used both legitimate and illegitimate criteria in a suit alleging disparate-treatment, "the plaintiff retains the burden of persuasion on the issue whether gender played a part in the employment decision"); *see also Wards Cove Packing Co., Inc. v. Atonio,* — U.S. —, 109 S.Ct. 2115, 2126, 104 L.Ed.2d 733 (1989) (where an employer meets the burden of producing evidence of a business justification in a disparate-impact case, the burden of persuasion remains with the plaintiff to disprove the purported rationale).

In this case, Williams had testified that insubordinate white employees were *not* subjected to the treatment she received. Specifically, she had testified that Judy Allen, Donna Vescio, John Sobocinski and Patty Novak had at times refused to comply with Lichius' orders, but were never reprimanded. Trial Transcript at 105–08, *reprinted in* Appellant's App. at 160–63. Based on such probative testimony from Williams, it would not have been in our view reversible error if another fact finder had found that the Giant Eagle's purported justification for discharging Williams was merely pretextual, and that her race was the actual motivating factor behind Giant Eagle's decision. Certainly, Johnson, who chose not to evaluate the evidence as the

**11.** We recognize that *Green v. Armstrong Rubber Co.,* 612 F.2d 967 (5th Cir.), *cert. denied,* 449 U.S. 879, 101 S.Ct. 227, 66 L.Ed.2d 102 (1980), suggests a contrary view. In that case, which involved a black employee's discharge for violation of work rules, the court of appeals held that in order for the plaintiff to establish a *prima facie* case of discrimination, he had to "demonstrate by a preponderance of the evidence either that he did not violate the rule or that, if he did, white employees who engaged in similar acts were not punished similarly." *Id.* at 968. However, we decline to follow this approach since a plaintiff's disproving of a legitimate nondiscriminatory reason for his or her discharge addresses the third phase of the allocation of burdens under *McDonnell Douglas* and *Burdine,* discussed *infra.*

trial judge did in this case, had reasonable grounds for believing that Giant Eagle's purported justification for his client's dismissal was challengeable.

Moreover, even if Johnson had known that Giant Eagle had an *unchallengeable* defense at the time he commenced this suit, that fact would not have been sufficient to support a finding of bad faith. In *Ford v. Temple Hospital*, 790 F.2d 342 (3d Cir. 1986), counsel filed an employment discrimination suit *after* the statute of limitations period had expired.[12] Although the statute of limitations was an affirmative defense, *see* Fed.R.Civ.P. 8(c), we held that counsel's knowledge of that fact at the time that he initiated the lawsuit could not be the basis for a finding of bad faith. We reasoned that

> [i]n the real world of litigation, counsel are not expected to be omniscient. No one knows for certain whether a potential affirmative defense will be in fact pled.... [Counsel] was not bound to assume that his potential adversaries would plead the defense or that by their conduct they might not in some way waive the defense.

790 F.2d at 348–49.

Likewise, even if we were to assume, as the district court suggests, that insubordination was an air-tight defense, Johnson's knowledge of that defense could not have been a proper basis for the district court's conclusion that he should have never brought this lawsuit. Williams would have won on her *prima facie* case alone if Giant Eagle had not rebutted the presumption of discrimination by coming forth with evidence that persuaded the trial judge that there was a legitimate nondiscriminatory reason for its conduct. *See Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094.

We believe that the trial judge fell into error in his understanding of the prerequisites for imposing liability against Johnson under § 1927. The imposition of attorneys' fees, under the facts of this case, would deprive a lawyer of his ethical obligation to represent his client zealously. The late Judge Weinfeld wisely admonished us that

> [t]he power to assess the fees against an attorney should be exercised with restraint lest the prospect thereof chill the order of proper and forceful advocacy on behalf of his client.

*Colucci v. New York Times Co.*, 533 F.Supp. 1011, 1014 (S.D.N.Y.1982). Moreover, the Supreme Court's warning in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), bears repeating:

> [I]t is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success.... Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.

*Id.* at 421–22, 98 S.Ct. at 700–01.

We conclude that the district court's finding that Johnson brought this suit on behalf of his client in bad faith was clearly erroneous. Consequently, the court improperly imposed attorneys' fees against Johnson under § 1927.

## IV.

For the foregoing reasons, we will affirm the judgment of the district court on the merits of this case, but will reverse the district court's order awarding attorneys' fees.

---

**12.** Counsel had commenced the Title VII action 104 days after issuance of the EEOC's right-to-sue letter, instead of within the 90 day period specified by 42 U.S.C. § 2000e–5(f)(1) (1982).