**Huey P. PAYNE, Plaintiff,**

v.

**Anthony T. FRANK, Postmaster General of the United States of America, Defendant.**

**Civ. No. 88–CV–72403.**

United States District Court, E.D. Michigan, S.D.

Feb. 27, 1990.

720

Marvin Winston Smith, Detroit, Mich., for plaintiff.

Asst. U.S. Atty. Peter Caplan, Detroit, Mich., for defendant.

## ORDER

JULIAN ABELE COOK, Jr., Chief Judge.

On May 17, 1989, the Defendant, Anthony T. Frank, Postmaster General of the United States of America, filed a motion to reconsider a previous Order of this Court.[1] For the following reasons, this Court denies Frank's reconsideration request.

### I.

On March 6, 1984, the United States Postal Service hired the Plaintiff, Huey P. Payne, as a custodian. On March 23, 1987, Payne, a black male, had a physical confrontation with David L. Moss, a white male, during working hours at the Air Mail Facility. The confrontation between Payne and Moss violated a company work rule that prohibits such physical encounters. Payne was subsequently discharged as a result of his participation in this confrontation.[2]

---

1. In the United States District Court for the Eastern District of Michigan, motions for reconsideration are governed by Local Rule 17(m)(3), which provides:

 Generally, and without restricting the discretion of the Court, motions for rehearing or reconsideration which merely present the same issues ruled upon by the Court, either expressly or by reasonable implication, shall not be granted. The movant shall not only demonstrate a palpable defect by which the Court and the parties have been misled but also show that a different disposition of the case must result from a correction thereof.

Local Rule 17(m)(3).

2. On July 1, 1987, Payne was convicted in a state court of criminal assault and battery as a result of his confrontation with Moss. Frank also notes that Payne was involved in a prior altercation at work on December 27, 1983. On that occasion, Payne allegedly slapped Karen Saunders, a co-employee, in the face. As a result of this 1984 incident, he was suspended from December 28, 1984 through January 14, 1985.

On June 9, 1988, Payne brought the instant suit, in which he alleged that Frank had wrongfully discharged him in violation of, *inter alia*, Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e.[3] In support of his theory of disparate treatment, Payne maintains that he was discharged while two similarly situated white employees, who violated the same work rule, were not discharged. According to Payne, these two white males were involved in similar confrontations, received notices of discharge, but were retained in their respective employment positions.[4] On February 24, 1989, Frank moved for a summary judgment, contending that Payne could not establish a prima facie case as required by Title VII case law. In response to Frank's

summary judgment motion, Payne proffered evidence that he, as a member of a protected class, had been discharged for violating a company work rule while his white counterparts received less severe punishment despite having violated the same rule. Thereafter, on May 3, 1989, this Court denied Frank's summary judgment motion after concluding that Payne had sufficiently pleaded a prima facie case of race discrimination.

 In his reconsideration motion, Frank maintains that this Court refused to attribute any significance to the fact that four black females violated the same proscription against physical confrontations and were retained in their employment capacities.[5] In Frank's opinion, this Court

**3.** Payne also alleged that his discharge was violative of 42 U.S.C. § 1981, the Fifth Amendment and Executive Order 11478. On May 3, 1989, this Court granted Frank's motion for summary judgment on these counts. In addition, a summary judgment was granted to Frank on Payne's Title VII claim of sex discrimination.

**4.** Specifically, Payne contends that on October 19, 1985, Fredrick W. McHenney, a white male who was employed at the Air Mail Facility, physically attacked Lee Saunders, a black male. Payne asserts that although McHenney subsequently received a notice of discharge on the basis of his violation of the postal service work rule at issue here, his employer retained him in his original employment capacity. The record also indicates that a second white male, D.A. Hurt, was also retained as a postal service employee after assaulting a co-worker in violation of the same work rule.

**5.** In his reconsideration motion, Frank also suggests that he is entitled to a summary judgment since "even if [Payne] had established a *prima facie* case of discrimination, a neutral, nondiscriminatory reason for discharge had been articulated." This Court rejects Frank's position on this issue for two reasons.

First, Frank's sole contention in support of his summary judgment motion, at least in the context of the *McDonnell Douglas/Burdine* analysis, was that Payne had failed to "clear the relatively low hurdle of establishing a prima facie case of race ... discrimination." Frank Motion at 5 (Feb. 24, 1989). *Because Frank did not attempt to present a legitimate reason for the alleged conduct involved, this Court was precluded from addressing that prong of the* McDonnell Douglas/Burdine *analysis. See Miller v. WFLI Radio, Inc.,* 687 F.2d 136 (6th Cir.1982) (court reversed magistrate's sua sponte finding that defendant had a legitimate, nondiscriminatory reason for adopting a certain action since plain-

tiff was not afforded "full and fair opportunity" to address, develop, and disprove reason as mere pretext for discharge).

This conclusion is not altered by the fact that Frank, in the last footnote in his moving papers, noted that "[e]ven if Payne had made out a prima facie case of discrimination, the Postal Service has come forward with a neutral, nondiscriminatory reason for discharge—the assault on a co-employee." *Frank Motion* at 6 n. 3 (Feb. 24, 1989). A recitation of the "assault of a co-employee" as a legitimate reason for the discharge merely begs the question. It is uncontested that Payne and the white employees assaulted and battered a co-employee. The second prong of the *McDonnell Douglas/Burdine* analysis requires the defendant to provide a legitimate reason why these employees were not punished equally. In sum, since the black and white employees assaulted a co-employee, Frank cannot engage in logical bootstrapping and suggest that the greater punishment which was imposed upon Payne was justified because he assaulted a co-employee.

To the extent that this ambiguous and abbreviated reference to the assault of a co-employee relates to Payne's alleged altercation with Saunders in 1984, *see supra* footnote 2, a summary judgment is still not warranted. Neither Payne nor this Court should have to guess as to a particular event or the reasons that serve as a legitimate basis for the discharge at issue. Frank's conclusory assertion that he has satisfied the second prong of the *McDonnell Douglas/Burdine* analysis does not satisfy the summary judgment requirements of Rule 56(c) of the Federal Rules of Civil Procedure. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986) (decision does not affect the validity of prior decision in *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), in which the Court stated that " 'both the commentary on and the

erroneously concluded that Payne had alleged a prima facie case of race discrimination since "[t]he existence of a single white individual in this group who allegedly received more favorable treatment than [Payne] does not create an inference of discrimination." Frank's Reconsideration Brief at 3 (May 17, 1989). Accordingly, he requests this Court to reconsider its earlier decision and grant his request for a summary judgment.[6]

## II.

■ Section 703 of Title VII provides:
(a) It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–2(a)(1). In a Title VII disparate-treatment case, the claimant must ultimately prove that the defendant acted with subjective discriminatory motive or intent. *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 714–15, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403 (1983); *Texas Dep't. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Daniels v. Board of Educa. of Ravenna City School*, 805 F.2d 203, 206 (6th Cir.1986). In *Kitchen v. Chippewa Valley Schools*, 825 F.2d 1004, 1011 n. 3 (6th Cir.1987), the Sixth Circuit Court of Appeals outlined the shifting burden of proof requirements in a disparate-treatment case as established in

*Texas Dep't. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981):

Under *Burdine*, the plaintiff has the initial burden of establishing a prima facie case raising an inference of discrimination. Once the plaintiff has done this, the burden of production "shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" *Id.* at 253, 101 S.Ct. at 1093 (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). The burden placed on the defendant at this point is the "burden of going forward with admissible evidence of a legitimate, non-discriminatory reason for not promoting the plaintif[f]." *Sones–Morgan v. Hertz Corp.*, 725 F.2d 1070, 1072 (6th Cir.1984). If the defendant carries that burden, "the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093. The burden of persuasion remains with the plaintiff throughout this process. *Id.*

*See also Daniels*, 805 F.2d at 206–07.[7]

With regard to the prima facie element of race discrimination cases, the Supreme Court has noted that "[t]he facts necessarily will vary in Title VII cases, and the specification ... of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations." *McDonnell Douglas*, 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13; *See also Nix v. WLCY Radio/Rahall Com-*

background of the 1963 Amendment conclusively show that it was not intended to modify the burden of the moving party ... to show initially the absence of a genuine issue concerning any material fact.'").

**6.** On May 25, 1989, Payne filed a responsive pleading in opposition to the instant motion for reconsideration. This Court shall not consider the contents of this responsive pleading since Payne (1) was not directed to submit additional papers, and (2) did not move for leave to file a response. *See* Local Rule 17(m)(2) ("No response to the motion and no oral argument

thereon shall be allowed unless the Court, after filing of the motion, otherwise directs.").

**7.** This Court agrees with the Third Circuit Court of Appeals that "[w]hile the Supreme Court's jurisprudence in the Title VII area has experienced change, no shadow has been cast on the *McDonnell Douglas/Burdine* allocation of burdens." *Williams v. Giant Eagle Markets, Inc.*, 883 F.2d 1184, 1192 (3rd Cir.1989) (citing *Price Waterhouse v. Hopkins*, —— U.S. ——, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989); *Wards Cove Packing Co., Inc. v. Atonio*, —— U.S. ——, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989)).

*munications,* 738 F.2d 1181, 1185 (11th Cir.1984) ("A prima facie case of discriminatory discharge may be established in different ways."). In cases in which the claimant maintains that racial animus was a factor in the discipline administered for a violation of work rule, the Fifth Circuit Court of Appeals has suggested that prima facie proofs require the claimant to show

> (1) that plaintiff was a member of a protected group; (2) that there was a company policy of practice concerning the activity for which he or she was discharged; (3) that non-minority employees either were given the benefit of lenient company practice or were not held to compliance with a strict company policy; and (4) that the minority employee was disciplined either without the application of a lenient policy, or in conformity with the strict one.

*EEOC v. Brown & Root, Inc.,* 688 F.2d 338, 340–41 (5th Cir.1982) (citing *Brown v. A.J. Gerrard Mfg. Co.,* 643 F.2d 273, 276 (5th Cir.1981)); *see also Williams,* 883 F.2d at 1191; *Evans v. Interstate Brands Corp.,* 557 F.Supp. 562, 563–64 (N.D.Ga. 1983).[8] In addition, the Supreme Court noted in *Burdine* that "[t]he burden of establishing a prima facie case of disparate

treatment is not onerous." *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093.

■ This Court believes that the following case authority supports its previous decision on this issue:

> [A]s long as a minority employee is discharged under circumstances in which a non-minority employee would not have been or in fact was not discharged, there exists a genuine issue of material fact as to the real reason behind the termination of the minority employee. In any situation in which a black employee is fired while a white employee is retained 'under similar circumstances,' the fact of dissimilar punishment for similar conduct raises an inference of racial discrimination sufficient to preclude the grant of summary judgment in favor of the defendant employer.

*Evans v. Interstate Brands Corp.,* 557 F.Supp. 562, 564 (N.D.Ga.1983) (citing *Davin v. Delta Airlines, Inc.,* 678 F.2d 567, 570 (5th Cir. Unit B 1982); *EEOC v. Brown & Root, Inc.,* 688 F.2d 338, 340 (5th Cir. 1982); *Rohde v. K.O. Steel Castings, Inc.,* 649 F.2d 317, 322–23 (5th Cir.) (per curiam), 449 U.S. 879 (1980); *Turner v. Texas Instruments, Inc.,* 555 F.2d 1251, 1254–55 (5th Cir.1977)).

---

**8.** It should be noted that some courts have adopted the prima facie test which was established by the Fifth Circuit Court of Appeals in *Green v. Armstrong Rubber Co.,* 612 F.2d 967, 968 (5th Cir.) (per curiam), *cert denied,* 449 U.S. 879, 101 S.Ct. 227, 66 L.Ed.2d 102 (1980), which required that

> the plaintiff must first demonstrate by a preponderance of the evidence either that he did not violate that rule or that, if he did, white employees who engaged in similar acts were not punished similarly.

*See also Jones v. Gerwens,* 874 F.2d 1534, 1540 (11th Cir.1989); *Wilmington v. J.I. Case Co.,* 793 F.2d 909, 915 (8th Cir.1986); *Moore v. City of Charlotte,* 754 F.2d 1100, 1105 (4th Cir.), *cert. denied,* 472 U.S. 1021, 105 S.Ct. 3489, 87 L.Ed.2d 623 (1985); *EEOC v. Chas. Schaefer Sons, Inc.,* 703 F.Supp. 1138, 1147 (D.N.J.1988); *Gunner v. Chevron USA, Inc.,* 684 F.Supp. 916, 920 (E.D. Tex.1988); *Padgett v. Litton Systems, Inc.,* 662 F.Supp. 106, 109–110 (S.D.Miss.1987).

This Court declines to adopt the *Green* standard for the reasons that were stated by the Eleventh Circuit Court of Appeals in *Anderson v. Savage Laboratories, Inc.,* 675 F.2d 1221, 1224 n. 4 (11th Cir.1982):

> The Court in *Green v. Armstrong Rubber Co., supra,* suggested that the work rule test operates to define a plaintiff's prima facie case for proving discrimination where the defendant asserts that the plaintiff was discharged for violating a work rule. Upon more careful consideration, we conclude that the "work rule" test does not affect a plaintiff's *prima facie* case but rather describes the burden of proving that the defendant's justification for discharging the plaintiff for violating a work rule was merely pretextual.

*See also Williams,* 883 F.2d at 1192 n. 11 (refused to adopt a prima facie test of *Green* "since a plaintiff's disproving of a legitimate nondiscriminatory reason for his or her discharge addresses the third phase of the allocation of burden under *McDonnell Douglas* and *Burdine*."); *Delgado v. Lockheed–Georgia Co.,* 815 F.2d 641, 645 (11th Cir.1987) (emphasis added) ("plaintiff may prove *pretext* by showing 'either that he did not violate the work rule or that, if he did, other employees not within the protected class who engaged in similar acts were not similarly treated.' ").

This conclusion is not altered by evidence that Frank did not discharge four other black employees (protected class members) who ostensibly violated the same work rule. In fact, this Court believes that the decision of the Supreme Court in *Furnco Construction Co. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978) is instructive, if not dispositive, on this issue.

In *Furnco*, the Court addressed the significance of similar statistical evidence that had been presented by a defendant in a disparate-treatment case. In that case, the claimants, three black men, maintained that the defendant had refused to hire them on the basis of their race in violation of Title VII. In an attempt to rebut the claim of racial animus, the defendant sought to introduce evidence that it had employed a racially balanced work force. The Court of Appeals refused to lend credence to this statistical evidence, concluding that once the plaintiff has put forth a prima facie case of race discrimination under the *McDonnell Douglas* standard, such evidence is irrelevant to the issue of the defendant's motive or intent. In rejecting the position of the Court of Appeals, the Supreme Court noted that

> [i]t is clear beyond cavil that the obligation imposed by Title VII is to provide an equal opportunity for *each* applicant regardless of race, without regard to whether members of the applicant's race are already proportionately represented in the work force.
>
> A *McDonnell Douglas* prima facie showing is not the equivalent of a factual finding of discrimination.... When a prima facie showing is understood in this manner, the employer must be allowed some evidence which bears on motive. Proof that his work force was racially balanced or that it contained a disproportionately high percentage of minority employees is not wholly irrelevant on the issue of intent when that issue is not yet to be decided. We cannot say that such proof would have absolutely no probative value in determining whether the otherwise unexplained rejection of the minority applicants was discriminatorily motivated. *Thus, although we agree with the Court of Appeals that in this case such proof neither was nor could have been sufficient to conclusively demonstrate that [the defendant's] actions were not discriminatorily motivated, the District Court was entitled to consider the racial mix of the work force when trying to make the determination as to motivation.*

*Id.* at 579–80, 98 S.Ct. at 2951 (citations omitted) (emphasis added).

■ Thus, the *Furnco* Court determined that evidence which suggests that the defendant in a failure to hire Title VII case maintains a racially balanced work force is relevant, but not dispositive, on the ultimate issue of discriminatory intent or motive. Similarly in the instant case, this Court believes that the employer's refusal to impose similar punishment on other members of the protected class is relevant, but not dispositive, on the merits of a Title VII action in which a claim of unequal punishment for the violation of an employee work rule has been alleged.

■ In essence, the manner in which an employer treats a protected class in general, as reflected in statistical data, does not necessarily defeat the prima facie claim of an individual member within that protected class. *See Asbury v. Brougham*, 866 F.2d 1276, 1281 (10th Cir.1989) (applying the Title VII *McDonnell Douglas/Burdine* analysis in a case in which the plaintiff claimed that defendants had refused to rent an apartment or townhouse on basis of race, the Court rejected the defendants' argument that evidence of a high percentage of minority occupancy in housing units at issue rebuts plaintiff's claim of intentional racial discrimination: "Although such statistical data is relevant to rebutting a claim of discrimination, statistical data is not dispositive of a claim of intentional discrimination."); *EEOC v. Chas. Schaefer Sons, Inc.*, 703 F.Supp. 1138, 1148 (D.N.J. 1988) (citation omitted) (in a Title VII action regarding a claim of racial discrimination as a result of disparate punishment for a violation of work rules, the plaintiff's *prima facie* case was deemed to have been unrebutted by the defendant's proffer of

"certain statistical data to demonstrate a racially balanced workforce.... [S]tatistics are often unrevealing or unreliable 'because company-wide data may mask discrimination on a smaller scale.' ").

In the case at hand, and at best, the evidence concerning Frank's treatment of similarly situated protected members creates a genuine issue of fact regarding the requisite intent or motive involved. It does not, however, entitle him to summary judgment.[9] Because the finder of fact must determine whether such statistical data weakens or dispels the adverse inference attendant to a prima facie showing under

*McDonnell Douglas/Burdine*, Frank has failed his initial burden of demonstrating the absence of evidence to support Payne's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). As such, this Court believes that its decision to deny Frank's summary judgment request was devoid of a palpable defect. Hence, the instant motion to reconsider must be denied.

IT IS SO ORDERED.

---

**9.** In support of his reconsideration motion, Frank relies upon *Alexander v. Gardner–Denver Co.*, 519 F.2d 503 (10th Cir.1975), *cert. denied*, 423 U.S. 1058, 96 S.Ct. 793, 46 L.Ed.2d 648 (1976) and *Gilliam v. Roadway Express, Inc.*, 33 Fair Empl.Prac.Cases (BNA) 1219 (M.D.Tenn. 1982). This Court finds that *Alexander* is fully consistent with the analysis in *Furnco*, and (2) *Gilliam* is inapposite to the instant dispute.

In *Alexander*, the Tenth Circuit Court of Appeals upheld the conclusion of the lower court that the claimant, who claimed to have been discharged on the basis of his race, failed to carry his burden of establishing a discriminatory motive or intent. After concluding that it did "not believe the record establishes an inequality in treatment between appellant and other employees," the Court stated that

> [o]ther evidence supports the trial court's finding that the discharge was unrelated to race. [The claimant's foreman] supervised and trained another black employee ... [who] had [the same employment deficiencies as the claimant] but his work improved and he remained with the company....

*Id.* at 507. *Alexander* is clearly consistent with *Furnco*, as well as the decision of this Court, when it considered and evaluated statistical data regarding a defendant's treatment of other similarly situated members of a protected group in determining whether the claimant has proven the requisite discriminatory animus. Such evidence is not conclusive and, thus, merely presents an issue of fact to be decided by the jury.

At the conclusion of the bench trial in *Gilliam*, the Court determined that the claimant, who asserted that he had been disproportionately punished by his employer on the basis of his race, also failed to satisfy his ultimate burden of proving discriminatory intent. Gilliam, a black truck driver, had been discharged as a result of his involvement in a "serious preventable accident."

In support of his discrimination claim, Gilliam maintained that while most such discharges are rescinded or converted into a sus-

pension by his employer, his discharge was enforced by the employer. In resolving this first contention, the Court noted that the group of similarly situated employees, who had been identified by Gilliam, was reinstated because they had offered some mitigating factor or alternative theory regarding the fault of the accident. In the opinion of the Court, Gilliam's failure to provide such an explanation was evidence that his employer's conduct was not discriminatory. The Court also reviewed Gilliam's contention of discrimination which was based on his allegation that he was not reinstated, while certain similarly situated white drivers had been retained, following discussions between the employer and union officials at the local level. In its analysis of this theory of discrimination, the *Gilliam* Court stated that it was required to review all comparable discharges of white and black employees which occurred over an appropriate period of time. The record revealed that seven of the seventeen employees who were reinstated under this procedure were members of a protected class. Faced with this statistical data, the Court reasoned that:

> [i]n light of these facts, and in the absence of proof that would otherwise show discriminatory intent on the part of the defendant, a holding that the defendant's policy infected by racial considerations would defy explication.

*Gilliam*, 33 Fair Empl.Prac.Cas. at 1220.

This Court finds the *Gilliam* decision to be inapposite to the instant cause for several reasons. First, the *Gilliam* Court did not indicate whether the disparate-impact of disparate-treatment doctrinal analysis was employed to resolve the Title VII issue. Second, the Court in *Gilliam* did not discuss the *McDonnell Douglas/Burdine* burden shifting analysis or the *Furnco* statistical data analysis. Third, the motion, which is currently pending before this Court, focuses upon whether Payne has established a prima facie showing of discrimination, while the *Gilliam* decision focused on whether the claimant had satisfied his ultimate burden of establishing discriminatory motive or intent at the conclusion of a bench trial. Thus, *Gil-*

*liam, inter alia,* provides little instructional value to this Court in the instant dispute.