Michael R. BOYKIN, et al., Plaintiffs

v.

BLOOMSBURG UNIVERSITY
OF PENNSYLVANIA, et
al., Defendants

No. 4:CV–94–306.

United States District Court,
M.D. Pennsylvania.

Jan. 19, 1995.

Robert S. Mirin, Mirin & Jacobson, Harrisburg, PA, for Plaintiffs.

R. Douglas Sherman, Attorney General's Office, Harrisburg, PA, for Defendants Dr. Harry Ausprich, Lt. Deborah Barnes, University of Bloomsburg, Charles Confer, Timothy Downs, Dr. Curtis English, Margaret Manning, Dr. Robert Parrish, Sallie Samsel, John Walker, and Irvin Wright.

Sarah M. Bricknell, Buchanon Ingersoll, P.C., Harrisburg, PA, for Defendant Virginia McAfee.

Sean P. McDonough, Dougherty, Leventhal & Price, Scranton, PA, for Defendant William Kreisher.

Samuel E. Klein, Dechert, Price & Rhoads, Philadelphia, PA, for Defendants Press Enterprise, Inc. and Paul Eyerly, III.

## OPINION

MUIR, District Judge.

### I. Introduction.

This order relates to a motion for sanctions against Robert S. Mirin, counsel for the Plaintiffs, filed by Defendants Press–Enterprise, Inc. and Paul Eyerly, III, publisher of Press–Enterprise ("media defendants").

A hearing on the motion commenced Friday, October 21, 1994. Mr. Mirin was the sole witness that entire day. During the day the Court stated that Mr. Mirin's answers were extremely lengthy, that the proceedings were moving slowly, and that if the hearing was not terminated by 4:15 p.m. on the 6th hearing day, the Court would terminate it at that time. The hearing concluded on the sixth hearing day, October 28, 1994, at 4:12 p.m.

During the last day of the hearing, the Court set filing dates for proposed supplemental findings of fact, objections and briefing.

At the conclusion of the hearing, the Court made oral findings of fact and stated oral conclusions of law, reserving the right to supplement the same after consideration of the above-scheduled filings. Those oral findings and conclusions are embodied in our order of October 30, 1994, and are interspersed within our findings of fact set forth below.

On November 7, 1994, the media defendants filed proposed supplemental findings of fact and a supplemental submission and affidavit in support thereof. On November 14, 1994, Mr. Mirin filed objections to the media defendants' proposed supplemental findings of fact. On November 18, 1994, Mr. Mirin filed a brief in support of his objections. On November 18, 1994, the media defendants filed a brief in opposition to Mirin's objections. No reply brief was filed.

On December 9, 1994, at the request of Mr. Mirin, we held a second hearing to address the proposed supplemental findings of fact submitted by the Media Defendants on November 7, 1994. The hearing concluded at 4:30 p.m. on December 9, 1994.

At the conclusion of the hearing, we established a filing deadline of December 23, 1994, for the submission of additional proposed findings of fact and conclusions of law with respect to the issues raised at the second hearing. On December 13, 1994, we issued an order in which reduced our oral order of December 9, 1994, to writing and also allowed for the submission of additional proposed supplemental findings of fact and conclusions of law with respect to the first hearing.

On December 21, 1994, we granted Mr. Mirin's motion for an extension of time to file his additional proposed supplemental findings of fact and conclusions of law. On December 23, 1994, the media defendants filed their additional proposed supplemental findings of fact and conclusions of law. On December 30, 1994, Mr. Mirin filed his additional proposed findings of fact and conclusions of law. This matter is ripe for disposition. The following are the Court's findings of fact, discussion, and conclusions of law with regard to the issues raised.

## II. Findings of Fact.

1. Plaintiffs in the above action are Michael R. Boykin, Margaret L. Boykin and Aaron M. Boykin, all individuals residing at 203 Glenn Avenue, Bloomsburg, Pennsylvania. (Undisputed, hereafter "U")

2. Counsel for Plaintiffs in the above action is Robert S. Mirin, Esquire, of Mirin & Jacobson, P.C., 8150 Derry Street, Harrisburg, PA 17111–5260. (U)

3. Plaintiffs commenced an action in state court on January 11, 1994, by filing a Praecipe for Writ of Summons in the Court of Common Pleas of Columbia County, Pennsylvania, C.A. No. 31–1994. (U)

4. Writs were issued in plaintiffs' state court suit to Bloomsburg University and eight other Bloomsburg related officials and individuals (hereinafter "the Bloomsburg defendants"), along with several Pennsylvania state troopers and other state actors.

5. Paul Eyerly, III (hereinafter "Eyerly"), the publisher of the *Press–Enterprise,* also was named as defendant in plaintiffs' state court action.

6. Press–Enterprise, Inc. (hereinafter "Press–Enterprise") publishes the *Press–Enterprise,* a newspaper of general circulation in Bloomsburg, Pennsylvania and surrounding areas. (U)

7. Eyerly and Press Enterprise, Inc. are hereinafter referred to as the "media defendants."

8. On January 24, 1994, defendant Eyerly praeciped the Court for a Rule directing plaintiffs to file a Complaint against him in the state court action. (U)

9. On January 24, 1994, the Columbia County Prothonotary executed the Rule, ordering plaintiffs to file a Complaint against Eyerly within 20 days after service of the Rule. (U)

10. On February 8, 1994, counsel for defendant Eyerly served plaintiffs by placement in first-class U.S. Mail on that date with the Rule from the Columbia County Prothonotary.

11. Plaintiffs did not file a Complaint with the Columbia County Prothonotary by March 2, 1994, as directed by the Rule issued by the Court of Common Pleas.

12. On March 2, 1994, defendant Eyerly praeciped the Court to enter a Judgment of Non Pros against plaintiffs for failing to comply with the state court Rule. (U)

13. On March 2, 1994, the Prothonotary of the Court of Common Pleas of Columbia County entered an Order granting a Judgment of Non Pros against plaintiffs, thereby dismissing Eyerly as a defendant from the action. (U)

14. On March 2, 1994, plaintiffs initiated the instant action by filing a Complaint in the Middle District of Pennsylvania, No. 4:CV–94–306 ("Boykin I"), naming several other defendants, including Eyerly and the *Press–Enterprise.* (U)

15. The parties have continuously referred in their papers and in their testimony to the action filed in this Court on March 2, 1994, as Boykin I and the action instituted January 11, 1994, in the Court of Common Pleas of Columbia County and removed to this Court on May 31, 1994, as Boykin II. (Because of the use of these designations in undisputed facts, we will retain those designations despite the confusion obviously engendered).

16. In *Boykin I,* plaintiffs alleged that the publication of certain unidentified news articles by the *Press–Enterprise* violated the federal civil rights laws, including sections 1981, 1983, 1985 and 1986 of Title 42, as well as violated Title VII.

17. In their *Boykin I* federal court Complaint, plaintiffs also alleged state law claims against the media defendants, including defamation and invasion of privacy. (U)

18. The civil rights claims and pendent libel and invasion of privacy allegations in the *Boykin I* federal complaint were of a general nature, and no newspaper articles were identified in the complaint.

19. No newspaper articles were physically attached as exhibits to the *Boykin I* federal Complaint. (U)

20. On March 23, 1994, the media defendants filed a Motion to Dismiss plaintiffs' Complaint with this Court. (U)

21. In the Motion to Dismiss, the media defendants argued, among other things, that plaintiffs' state law libel and privacy claims were time barred under the applicable one year statute of limitations and that plaintiffs' libel and privacy claims were legally insufficient. (U)

22. As of March 23, 1994, plaintiff's counsel was put on notice that the media defendants contended that plaintiffs' state law libel and privacy claims were time-barred under the applicable one year statute of limitations.

23. After the media defendants agreed to give plaintiffs a ten day extension to respond, on April 18, 1994, plaintiffs filed their brief in opposition to the motion to dismiss. (U)

24. On April 20, 1994, in the earlier state court action initiated by Writ of Summons, the Bloomsburg University defendants, by the Commonwealth's attorney, praeciped the Columbia County Prothonotary to Rule plaintiffs to file a Complaint as to the Bloomsburg defendants or suffer a Judgment of Non Pros. (U)

25. On April 20, 1994, the Columbia County Prothonotary issued a Rule to plaintiffs ordering them to file a Complaint with respect to the Bloomsburg defendants within 20 days after service of the Rule. (U)

26. In response to the Rule, plaintiffs filed a Complaint ("Boykin II") in the Columbia County state court action, No. 31–1994, on or about May 9, 1994. (U)

27. In this state complaint which is virtually identical to the federal complaint in *Boykin I*, in addition to naming the Bloomsburg defendants and several other state actors, plaintiffs also identified the *Press–Enterprise* as a defendant for the first time.

28. The state court Rule issued on April 20, 1994, did not require plaintiffs to file a complaint as to the media defendants.

29. Plaintiffs also named Paul Eyerly, III, as publisher, as a defendant in this Complaint, despite that when the Complaint was filed, the prior March 2, 1994 Order non prossing plaintiffs as to defendant Eyerly and dismissing Eyerly from the action remained a valid, standing Order. (U)

30. Plaintiff's *Boykin II* Complaint was virtually identical to the previous *Boykin I* Complaint filed in the Middle District of Pennsylvania. (U)

31. The *Boykin I* and *Boykin II* Complaints allege identical claims of defamation and invasion of privacy against the media defendants. (U)

32. No newspaper articles were identified in the body of the *Boykin II* Complaint.

33. No newspaper articles were attached as exhibits to the *Boykin II* Complaint. (U)

34. On May 16, 1994, counsel for the media defendants wrote to plaintiffs' counsel, Robert S. Mirin, Esquire, informing him that in defense counsel's view plaintiffs had engaged in procedural maneuvers calling in question their "good faith." (U)

35. The media defendants contend that their May 16, 1994 letter to plaintiffs' counsel put him on notice that the media defendants intended to seek counsel fees and sanctions, if plaintiffs would not dismiss their claims against the media defendants in *Boykin II*. (U)

36. On May 17, 1994, this Court dismissed all claims against the media defendants in *Boykin I*. (U)

37. The Court's May 17, 1994 Memorandum stated that plaintiffs' libel and privacy claims against the media defendants were barred by the applicable one-year statute of limitations. (U)

38. The Court's May 17, 1994 Memorandum stated that plaintiffs' libel and privacy claims against the media defendants "failed to meet the most basic pleading requirements" and that the Complaint failed to allege the necessary elements to sustain such claims. (U)

39. The Court's May 17, 1994 Memorandum stated that plaintiffs' federal civil rights claims under §§ 1985 and 1986 "were devoid of merit" and that plaintiffs failed to allege sustainable claims against the media defendants. (U)

40. The Court's May 17, 1994 Memorandum stated that plaintiffs' Complaint failed to allege sustainable § 1981 or § 1983 claims as to the media defendants. (U)

41. On May 31, 1994, the Bloomsburg defendants successfully petitioned the Court to remove the state court *Boykin II* Complaint to the Middle District of Pennsylvania, No. 4:CV–94–817, at which time plaintiff's Motion to Strike the Judgment of Non Pros was pending. (U)

42. On June 1, 1994, plaintiffs filed an Application for Reconsideration of the federal Court's May 17, 1994 Order and Memorandum, dismissing all claims against the media defendants in the *Boykin I* Complaint. (U)

43. Prior to filing a 12(b)(6) Motion with respect to the *Boykin II* Complaint, pursuant to the Middle District Rule 7.1, the media defendants contacted the offices of plaintiffs' counsel to ask that he withdraw his claims voluntarily against Eyerly and the *Press–Enterprise*, but plaintiff's counsel was unavailable. (U)

44. On June 7, 1994, the media defendants were required under the Federal Rules to file either a responsive pleading or a 12(b) Motion to Dismiss with respect to the removed *Boykin II* Complaint. (U)

45. On June 7, 1994, the media defendants filed a 12(b)(6) Motion to Dismiss Plaintiffs' *Boykin II* Complaint on the grounds that: (a) plaintiffs' claims against the media defendants were identical to the claims previously dismissed on their merits by this Court; (b) plaintiffs' state law libel and privacy claims were time barred under the applicable one year statute of limitations and were legally insufficient; and (c) plaintiff failed to state a claim for a federal civil rights violation. (U)

46. The media defendants subsequently contacted plaintiffs' counsel again to seek his concurrence to the motion to dismiss filed in *Boykin II*, and plaintiffs' counsel agreed to dismiss the claims against Eyerly only. (U)

47. On June 15, 1994, the Court ordered *Boykin I* and *Boykin II* to be consolidated under Civil Action No. 4:CV–94–306. (U)

48. On June 30, 1994, plaintiffs filed a Brief in Support of Plaintiffs' Motion for Reconsideration.

49. In plaintiffs' Brief in Support of Plaintiffs' Motion for Reconsideration, plaintiffs admitted that their state law libel and invasion of privacy claims were barred by the applicable statute of limitations. Further, plaintiffs also admitted with respect to this same issue that "the law of Pennsylvania is against them." Brief in Support at 2.

50. In plaintiffs' Brief in Support of Plaintiffs' Motion for Reconsideration, plaintiffs' argument as to the reason why the Court should reconsider its decision with respect to plaintiffs' libel and privacy claims is "that the law of Pennsylvania is unjust and should be changed." Brief in Support at 2.

51. On July 18, 1994, this Court denied plaintiffs' Motion for Reconsideration with respect to the above matter. (U)

52. In the Court's July 18, 1994 Order, it held that the media defendants' motion to dismiss the *Boykin II* Complaint was deemed to be moot because the two cases had been consolidated. (U)

53. In a previous state court action filed in Columbia County, Pennsylvania, not involving the Boykins, plaintiffs' counsel, Robert S. Mirin, Esquire, filed a suit on November 11, 1993, on behalf of plaintiff, George Mitchell. (U)

54. As was the case in *Boykin,* the Complaint filed in *Mitchell* named multiple defendants and asserted federal civil rights violations and pendent state claims. (U)

55. The *Mitchell* complaint, *inter alia,* also asserted libel and invasion of privacy claims against defendant Press Enterprise, Inc. (U)

56. The Complaint filed in *Mitchell v. Bloomsburg Univ. of Pa., et al.,* No. 1674–93, was removed to the Middle District of Pennsylvania on December 3, 1993, and is presently in discovery. (U)

57. Three of the articles attached to the Complaint were published more than one

year before plaintiff initiated suit in *Mitchell.* (U)

58. On December 9, 1993, *Press–Enterprise* filed a Motion to Dismiss all claims against it in the *Mitchell* action. (U)

59. In its Motion to Dismiss, *Press–Enterprise* put plaintiff on notice of its contention that three of the articles on which its defamation and invasion of privacy claims were based were time barred by the statute of limitations and that these claims were legally deficient. (U)

60. Plaintiff was also put on notice in this same Motion to Dismiss that one of the articles upon which plaintiff's defamation and invasion of privacy claims were based was not published by the *Press–Enterprise.* (U)

61. On January 14, 1994, in *lieu* of responding to the *Press–Enterprise's* 12(b)(6) Motion to Dismiss, plaintiff Mitchell filed an Amended Complaint. (U)

62. In the Amended Complaint filed in *Mitchell,* plaintiff's counsel deleted plaintiffs' libel claims, but continued to assert claims for invasion of privacy against the *Press–Enterprise.* (U)

63. One of the articles attached to the Amended Complaint filed in *Mitchell,* entitled "President responds to issues," was not published by the *Press–Enterprise.* (U)

64. On March 4, 1994, defendant *Press–Enterprise* filed a Motion to Dismiss Plaintiff's Amended Complaint in *Mitchell.* (U)

65. In this second Motion to Dismiss, the *Press–Enterprise* again put plaintiff on notice of its contention that three of the articles on which its invasion of privacy claims were based were time barred by the statute of limitations and that their claim with respect to the remaining article was legally deficient. (U)

66. On April 15, 1994, The Honorable James F. McClure, Jr., United States District Judge for the Middle District of Pennsylvania, issued a Memorandum Opinion in *Mitchell* granting the *Press–Enterprise's* 12(b)(6) Motion to Dismiss, dismissing all claims against the *Press–Enterprise* with prejudice. (U)

67. Judge McClure's April 15, 1994 Memorandum Opinion stated that four of the articles on which plaintiff's invasion of privacy claims were based were published more than one year prior to plaintiff's commencement of the *Mitchell* action. (U)

68. Judge McClure's April 15, 1994 Memorandum Opinion stated that four of the articles on which plaintiff's invasion of privacy claims were based were barred by the statute of limitations. (U)

69. Judge McClure's April 15, 1994 Memorandum Opinion stated that plaintiffs' claims on the only remaining article that was not time-barred, could not reasonably be read to portray plaintiff in a false light. (U)

70. Pursuant to Paragraph 2 of this Court's Order No. 1 of March 2, 1994, it was plaintiffs' counsel's obligation to arrange an attorneys' conference to discuss and submit a Case Management Plan.

71. Pursuant to Paragraph 1 of this Court's Order No. 2 of March 4, 1994, the date set for a case management conference with the Court was June 30, 1994.

72. On June 8, 1994, the Court advanced the case management conference to 9:00 a.m. on June 29, 1994.

73. On June 17, 1994, Plaintiff moved to extend the time to file the case management plan to July 1, 1994, and to hold the case management conference on July 8, 1994, which motion was granted by Order of June 27, 1994.

74. On July 7, 1994, the day before the scheduled case management conference, plaintiffs' counsel filed in Harrisburg a motion for a continuance of the case management conference which was denied.

75. The case management conference was held at 4:00 p.m. on July 8, 1994.

76. Despite plaintiffs' counsel being given an extension of time to arrange an attorneys' conference to discuss and prepare a Case Management Plan, none was arranged by plaintiffs' counsel.

77. Plaintiffs' counsel failed to fulfill his obligation to arrange an attorneys' conference to discuss the Case Management Plan.

78. Plaintiffs' counsel failed to participate in preparing the Case Management Plan filed in the above captioned matter.

79. Counsel for plaintiffs, Robert S. Mirin, Esquire, did not have in his possession any articles, claimed to be false and defamatory, at the time he filed the *Boykin I* Complaint on March 2, 1994.

80. Counsel for plaintiffs, Robert S. Mirin, Esquire, did not have in his possession any articles, claimed to be false and defamatory, at the time he filed the *Boykin II* Complaint on May 9, 1994.

81. Counsel for plaintiffs, Robert S. Mirin, Esquire, did not have in his possession any articles, claimed to be false and defamatory, at the time he refused to dismiss the *Boykin II* Complaint on May 17, 1994.

82. Counsel for plaintiffs, Robert S. Mirin, Esquire, was unable to identify a single *Press–Enterprise* article in his possession at the time he instituted the *Boykin I* or *Boykin II* actions.

83. Counsel for plaintiffs, Robert S. Mirin, Esquire, refused to dismiss the *Boykin II* Complaint filed on May 9, 1994, although he recognized that he was proposing three novel legal theories for which he could advance no existing legal precedent or legal support.

84. Counsel for plaintiffs, Robert S. Mirin, Esquire, refused to dismiss the *Boykin II* Complaint although he recognized that he was proposing three novel legal theories already rejected by the undersigned judge in *Boykin I*.

85. Counsel for Plaintiffs, Robert S. Mirin, Esq., proposed to change Pennsylvania law to reflect that the statute of limitations on a claim for defamation should run from the date of discovery of the offending language by plaintiff rather than from the date of publication.

86. Counsel for Plaintiffs, Robert S. Mirin, Esq., proposed to change Pennsylvania's law regarding the media's privilege to republish fairly and accurately the official disseminations of public officials at official press conferences.

87. Counsel for Plaintiffs, Robert S. Mirin, Esq., proposed to create law to the effect that the media could be held accountable for violation of a criminal defendant's civil rights if it, through lack of reasonable diligence, failed to uncover and publish facts favorable to the defendant.

88. The legal theories enunciated above by plaintiffs' counsel were pursued in bad faith.

89. The legal theories enunciated above by plaintiffs' counsel were maintained in bad faith.

90. Robert S. Mirin's clients would in no way have been prejudiced by dismissal of the *Boykin II* Complaint as it presented issues identical to those raised in the *Boykin I* Complaint.

91. Robert S. Mirin's grossly evasive answers to questions while on the stand on October 21, 1994, and October 24, 1994, were unconscionable and delayed these proceedings unreasonably.

92. Some of Robert S. Mirin's answers to questions posed by counsel for the media defendants and the Court were deceptive.

93. Some of Robert S. Mirin's explanation for his conduct in this litigation lacks credibility.

94. Robert S. Mirin's filing of a suit against Paul Eyerly, III, in *Boykin II* was in bad faith, vexatious, and harassing.

95. The failure of Robert S. Mirin to dismiss *Press–Enterprise* from *Boykin II* on May 17, 1994, was without basis, and was vexatious, harassing and in bad faith.

96. Robert S. Mirin's refusal to dismiss the *Boykin II* Complaint as to the *Press–Enterprise* on May 17, 1994 and thereafter, in the face of this Court's Order of May 17, 1994, and Mr. Mirin's admission that he could not point to a specific *Press–Enterprise* article in his possession claimed to be false and defamatory was in bad faith, harassing, and vexatious.

97. Robert S. Mirin's refusal to dismiss the *Boykin II* Complaint as to the *Press–Enterprise* on May 17, 1994 and thereafter, in the face of this Court's Order of May 17, 1994, and Mr. Mirin's admission that he could not point to a single specific act in furtherance of the claimed conspiracy on the part of the *Press–Enterprise* was in bad faith, harassing, and vexatious.

98. Plaintiffs' counsel, Robert S. Mirin, Esquire, failed to comply with this Court's Order No. 1 of March 4, 1994.

99. Robert S. Mirin, Esquire, failed to contact all defense counsel at least 15 days prior to the case management conference and to propose three alternative dates for a pre-case management conference between counsel was in violation of this Court's March 4, 1994 Order No. 1.

100. Plaintiffs' counsel failed to disclose witnesses as required by said Order.

101. Plaintiffs' counsel failed to disclose documents as required by said Order.

102. Robert S. Mirin's failure to attempt to schedule a pre-case management conference between counsel was in violation of Order No. 1 of March 4, 1994, frustrated the orderly resolution of this case, and placed an unusual burden on other counsel.

103. Robert S. Mirin's failure to comply with the requirements of Order No. 2 of March 4, 1994, frustrated the process for preparation of a statement of undisputed facts and created an extra burden on opposing counsel.

104. Robert S. Mirin, Esquire has acted in the matters which are the subject of this proceeding in willful bad faith.

105. Robert S. Mirin, Esquire, acted without proper regard for the rights of defendants Eyerly and the *Press–Enterprise.*

106. Robert S. Mirin, Esquire, flagrantly, and without justification, violated the orders of this Court.

107. Samuel E. Klein, counsel for the media defendants, is a graduate of Temple University and Temple University School of Law, having received a J.D. degree in 1971.

108. Following graduation from law school, Samuel E. Klein served as a law clerk for The Honorable Charles R. Weiner of the United States District Court for the Eastern District of Pennsylvania.

109. From 1972 to 1992, Samuel E. Klein was employed by the law firm known in 1992 as Kohn, Klein, Nast & Graf, P.C., of Philadelphia.

110. In 1992, Samuel E. Klein joined the firm of Dechert Price & Rhoads as a partner.

111. Samuel E. Klein has represented various news media clients in the defense of defamation and privacy cases throughout his 23 years at the Bar.

112. In addition to the media defendants herein, Samuel E. Klein has represented *The Philadelphia Inquirer, The Philadelphia Daily News,* Capital Cities/ABC, Inc., CBS, Inc., News America Corporation, Fox Broadcasting, Newsweek, Inc., the Associated Press, and many other clients in the defense of defamation and privacy actions.

113. Samuel E. Klein is the author of *The Media Survival Kit,* now in its fourth edition, which is a book for working journalists distributed to reporters and editors throughout Pennsylvania.

114. Samuel E. Klein is the Pennsylvania reporter for The Libel Defense Resource Center and The Reporters Committee for Freedom of the Press and has written chapters on Pennsylvania law for inclusion in their publications.

115. Samuel E. Klein has been recognized and is listed in *Who's Who in America* (49th ed. 1995) and in Naifeh and Smith, *Best Lawyers in America* (1993—1994).

116. Samuel E. Klein possesses extensive experience and special expertise in the defense of defamation and privacy actions.

117. Samuel E. Klein represents and has represented clients (other than the media defendants herein) in the Middle District of Pennsylvania in the defense of defamation and privacy actions.

118. Specifically, Samuel E. Klein regularly represents *The Wilkes–Barre Times Leader* and *The Bedford Gazette* in the defense of defamation and privacy actions; he also represents WHP–TV in Harrisburg and has represented *The York Daily Record* and Susquehanna Broadcasting Corporation.

119. Samuel E. Klein has represented other publishers throughout Pennsylvania, including the New–Castle News, The Meyersdale Republication, and The Elk County Register.

120. In all of his representation, including the representation of other clients in the Middle District of Pennsylvania, Samuel E.

Klein charges and is paid his regularly hourly rate which is presently $310 per hour.

121. The rate charged by Samuel E. Klein is the rate actually paid by the media defendants herein for work done through September 30, 1994, and is the rate charged but presently unpaid for work done since September 30, 1994.

122. Samuel E. Klein's hourly rate is comparable to rates of other attorneys in Philadelphia with reasonably comparable skill, similar experience, and reputation.

123. The hourly rates of Dechert Price & Rhoads are comparable to the rates charged by other large Philadelphia law firms, and are in line with those in the Philadelphia area for attorneys of reasonably comparable skill, experience and reputation.

124. The hourly rates of Dechert Price & Rhoads are in the upper range of rates charged by large Philadelphia law firms but are not the highest.

125. The prevailing rates for experienced federal court litigators in the Williamsport area range from $100 to $150 per hour.

126. The rates regularly charged by John M. Humphrey, Esq., an experienced litigator with more than 20 years of litigation experience, who practices in the Williamsport area, are $150 per hour for partners and approximately $125 per hour for associates in his firm, depending on experience.

127. Businesses in the Williamsport, Pennsylvania areas frequently seek specialized counsel from the larger metropolitan areas when faced with litigation requiring special attorney expertise.

128. Defense of a defamation or privacy action is the type of matter that local businesses may be expected to seek counsel with special expertise and experience in this field from outside of the Williamsport, Pennsylvania area.

129. There is no attorney in the Williamsport, Pennsylvania area with special expertise in the defense of defamation and privacy actions or who has special experience in that field of which the Court is aware.

130. The media defendants had sufficient reason and were justified in retaining Philadelphia counsel with special expertise and extensive experience in the defense of defamation and privacy actions to defend adequately their interests in the underlying litigation.

131. There are no comparable rates in the Williamsport, Pennsylvania area for attorneys with reasonably comparable skill, experience, and expertise in the defense of defamation and privacy actions.

132. When local businesses seeking special expertise retain counsel from outside of the Williamsport, Pennsylvania area, they expect to and do pay the normal hourly rates of the retained counsel.

133. It is fair, reasonable and appropriate to utilize the regular hourly rates of Dechert Price & Rhoads in the Philadelphia area in this action for purposes of determining the lodestar in this sanctions motion.

134. Samuel E. Klein's representation of the media defendants herein was of the highest quality and consistent with his expertise.

135. Samuel E. Klein's hourly rate of $310 per hour, in the light of his experience and expertise, is fair and reasonable.

136. Samuel E. Klein expended a total of 15 hours in representing the media defendants from May 17, 1994 through September 30, 1994, as follows:

| | | |
|---|---|---|
| May, 1994 | 1.40 hours | (Ex. D15 and Ex. D21, page 2) |
| June, 1994 | 7.40 hours | (Ex. D16 and Ex. D21, page 3) |
| July/August, 1994 | 4.70 hours | (Ex. D17 and Ex. D21, page 4) |
| September, 1994 | 1.50 hours | (Ex. D18 and Ex. D21, page 5) |
| | 15.00 hours | |

137. The 15 hours expended by Samuel E. Klein was reasonable and necessary for the defense of the action.

138. The time expended by Samuel E. Klein was necessitated by the bad faith conduct of Robert S. Mirin, and represents the excess attorneys' time spent by Mr. Klein as a result of the sanctionable conduct of Mr. Mirin.

139. Samuel E. Klein expended a total of 64.70 hours during the month of October, 1994 in preparation for and presentation of the media defendants' Motion for Sanctions (Ex. D40, page 4).

140. Robert S. Mirin's lengthy and unresponsive answers to questions posed to him during the sanctions hearing unreasonably delayed the proceedings.

141. Robert S. Mirin's constant, repeated and flagrant interruption of the Court, despite repeated warnings from the Court, unreasonably delayed the sanctions hearing.

142. Robert S. Mirin's failure to present exhibits in accordance with the procedures of Order No. 2 of March 4, 1994 caused repeated confusion during the sanctions hearing and unreasonably delayed the proceedings.

143. Robert S. Mirin's repeated attempts to offer evidence so remote and irrelevant to the issues before the Court, such as his attempt to offer evidence of the so-called "Fishing Creek Conspiracy" during the Civil War, unreasonably delayed the proceedings.

144. The sanctions hearing, which totalled seven hearing days including the 6–day initial hearing and 1 day supplemental, was unreasonably delayed by the unreasonable conduct of Robert S. Mirin, as indicated by this Court's Findings of Fact No. 91, 103, and 141–44.

145. Under the circumstances, the 64.70 hours expended by Samuel E. Klein during October, 1994 for preparation and participation in the hearing on the Motion for Sanctions was entirely reasonable and necessary.

146. Samuel E. Klein agreed to limit his request for compensation for the continued hearing conducted on December 9, 1994, to 4.50 hours to the time actually spent while the Court was in session.

147. The 4.50 hours expended by Samuel E. Klein on December 9, 1994, was reasonable and necessary.

148. Samuel E. Klein expended a total of 84.20 hours in connection with this matter for which compensation is sought, as follows:

| | |
|---|---|
| May—September, 1994 | 15.00 hours |
| October, 1994 | 64.70 hours |
| December 9, 1994 | 4.50 hours |
| | 84.20 hours |

149. The 84.20 hours expended by Samuel E. Klein were reasonable and necessary and represent the excess attorney's time spent by him as a result of the sanctionable conduct of Robert S. Mirin.

150. Jacquelyn J. Fatula is a 1989 graduate of Johns Hopkins University and received her J.D. degree from Temple University School of Law in 1992, where she was a member of the Temple Law Review.

151. Jacquelyn J. Fatula is an associate at Dechert Price & Rhoads, where she has been employed since September, 1992.

152. Since joining Dechert Price & Rhoads, Jacquelyn J. Fatula has assisted in the defense of defamation and privacy actions.

153. Jacquelyn J. Fatula's normal billing rate is $125 per hour.

154. Jacquelyn J. Fatula's rate is comparable to rates of other attorneys in the Philadelphia area with similar experience.

155. The rate charged for Jacquelyn J. Fatula is the rate actually paid by the media defendants herein.

156. Jacquelyn J. Fatula's work in this matter was of the highest quality and consistent with her experience.

157. Jacquelyn J. Fatula's hourly rate of $125 per hour is fair and reasonable.

158. Jacquelyn J. Fatula expended a total of 88.60 hours in representing the media defendants herein from May 17, 1994 through September 30, 1994, as follows:

| | | |
|---|---|---|
| May, 1994 | 6.90 hours | (Ex. D15 and Ex. D21, page 2) |
| June, 1994 | 52.20 hours | (Ex. D16 and Ex. D21, page 3) |
| July/August, 1994 | 19.25 hours | (Ex. D17 and Ex. D21, page 4) |
| September, 1994 | 10.25 hours | (Ex. D18 and Ex. D21, page 5) |
| | 88.60 hours | |

159. The 88.60 hours expended by Jacquelyn J. Fatula was reasonable and necessary for the defense of this action.

160. The time expended by Jacquelyn J. Fatula was necessitated by the bad faith conduct of Robert S. Mirin and represents the excess attorneys' time spent by Jacquelyn J. Fatula as a result of the sanctionable conduct of Robert S. Mirin.

161. Jacquelyn J. Fatula expended a total of 72.85 hours during the month of October, 1994 in preparation for and presentation of the media defendants' Motion for Sanctions (Ex. D40, page 4).

162. Under the circumstances, the 72.85 hours expended by Jacquelyn J. Fatula during October, 1994 for preparation and participation in the hearing on the Motion for Sanctions was reasonable and necessary.

163. Jacquelyn J. Fatula expended a total of 161.45 hours in connection with this matter for which compensation is sought.

164. The 161.45 hours spent by Jacquelyn J. Fatula was reasonable and necessarily incurred and represents the excess hours caused by the sanctionable conduct of Robert S. Mirin and the time expended in connection with the Motion for Sanctions.

165. Vernon L. Francis is a 1982 graduate of Haverford College and received his J.D. degree from the University of Pennsylvania in 1987 where he was editor-in-chief of the Law Review.

166. Vernon L. Francis, following a judicial clerkship for The Honorable Louis H. Pollack of the United States District Court for the Eastern District of Pennsylvania, was employed by Schnader, Harrison, Segal & Lewis of Philadelphia from September, 1988 to July, 1989; thereafter, he served in the Office of the Special Prosecutor for Iran/Contra until June, 1992.

167. Since joining Dechert Price & Rhoads in 1992, Vernon L. Francis has been engaged in the defense of defamation and invasion of privacy actions.

168. Vernon L. Francis' normal billing rate is $195 per hour.

169. Vernon L. Francis' billing rate is comparable to rates of other attorneys in the Philadelphia area with reasonably comparable skill and experience.

170. The rate charged by Vernon L. Francis is the rate actually paid by the media defendants herein.

171. Vernon L. Francis' hourly rate of $195 per hour is fair and reasonable.

172. Vernon L. Francis expended a total of 14 hours in representing the media defendants herein from May 17, 1994 through September 30, 1994, as follows:

| | | |
|---|---|---|
| June, 1994 | 5.30 hours | (Ex. D16 and Ex. D21, page 3) |
| July/August, 1994 | 8.20 hours | (Ex. D17 and Ex. D21, page 4) |
| September, 1994 | .50 hour | (Ex. D18 and Ex. D21, page 5) |
| | 14.00 hours | |

173. The 14 hours spent by Vernon L. Francis was reasonable and necessarily incurred in connection with defense of the action and preparation of the Motion for Sanctions.

174. The time expended by Vernon L. Francis was necessitated by the bad faith conduct of Robert S. Mirin and represents the excess attorneys' time spent by Vernon

L. Francis as a result of the sanctionable conduct of Robert S. Mirin.

175. Sheryl J. Cohen is a 1988 graduate of the University of Pennsylvania School of Law. She was employed for 5½ years by the Los Angeles, California firm of Paul, Hastings, Janofsky & Walker, and joined Dechert Price & Rhoads in April, 1994.

176. Sheryl J. Cohen's billing rate is $185 per hour.

177. Sheryl J. Cohen's billing rate is comparable to the rates of other attorneys in Philadelphia with similar skill and experience.

178. Sheryl J. Cohen's hourly rate of $185 is fair and reasonable.

179. In October, 1994, Sheryl J. Cohen expended 4.00 hours doing legal research in preparation for an anticipated motion by Robert S. Mirin to disqualify the trial judge in this hearing.

180. Although no such motion was made, Robert S. Mirin did clearly indicate in open court an intention to file such a motion.

181. Research by counsel for the media defendants in preparation of an answer to plaintiffs' counsel's anticipated motion is both necessary and proper.

182. The four hours spent by Sheryl J. Cohen was reasonably and necessarily incurred as a result of representations made by Robert S. Mirin during the course of the hearing on the Motion for Sanctions.

183. The fees reasonably incurred by counsel for the media defendants are as follows:

| | Fees |
|---|---|
| May 17, 1994—September 30, 1994 (Ex. D21) | $19,011.25 |
| October, 1994 (Ex. D40) | 29,965.75 |
| December 9, 1994 hearing | 1,395.00 |
| | $50,372.00 |

184. The lodestar amount of fees is $50,372.00.

185. Expenses incurred in connection with presentation of the first hearing on the motion for sanctions were $2,449.90 (Ex. D40, page 6).

186. Expenses incurred in connection with the December 9, 1995 hearing on the Motion for Sanctions were $158.57.

187. The total expenses of $2,608.47 were reasonably incurred in connection with the Motion for Sanctions.

188. The expenses incurred were fair and reasonable.

189. The expenses incurred represent excess expenses caused by the sanctionable conduct of Robert S. Mirin.

190. The total fees and expenses incurred were $52,980.47.

191. The excess costs, expenses and attorneys' fees reasonably incurred by the media defendants because of Robert S. Mirin's willful bad faith and unreasonable conduct are $52,980.47.

### III. Discussion.

■ Pursuant to 28 U.S.C. § 1927, a court may impose sanctions on counsel for engaging in conduct that "multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927 (1980). Under § 1927, a court may require that counsel personally satisfy "the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct." *Id.* Sanctions under § 1927 are directed at the offending attorney and may not be imposed upon his clients. *Williams v. Giant Eagle Markets, Inc.*, 883 F.2d 1184, 1190 (3d Cir.1989).

■ A requisite element to impose sanctions under § 1927 is a finding of willful "bad faith." *Williams*, 883 F.2d at 1190–91; *Ford v. Temple Hosp.*, 790 F.2d 342, 347 (3d Cir. 1986). A district court may impose sanctions if it finds the "'plaintiff's actions was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.'" *Ford*, 790 F.2d at 350, *quoting Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978). The Court of Appeals for the Third Circuit has stated that the "intentional advancement of a baseless contention that is made for an ulterior purpose, e.g., harassment or delay" may be indicative of bad faith. *Id.* at 347. Similarly, sanctions are appropriate under § 1927 where a party continues to pursue claims after having been formally or informally notified that these claims were barred by the statute of limitations. *See Fred A. Smith Lumber Co. v.*

*Edidin,* 845 F.2d 750 (7th Cir.1988); *Matthews v. Freedman,* 128 F.R.D. 194, 207 (E.D.Pa.1989) (Gawthrop, J.). A finding of "bad faith" is a factual determination to be made by the court.

■ Under § 1927, even if a lawsuit was initially filed in good faith, sanctions may be imposed on an attorney for all costs and fees incurred after the continuation of the suit which is deemed to be in bad faith. *Id. See Ford,* 790 F.2d at 350.

Furthermore, "[o]nce a finding of bad faith had been made, the appropriateness of sanctions is a matter entrusted to the discretion of the district court." *Quiroga v. Hasbro, Inc.,* 934 F.2d 497, 505 (3d Cir.1991), *citing Hackman v. Valley Fair,* 932 F.2d 239, 242 (3d Cir.1991), *cert. denied,* 502 U.S. 940, 112 S.Ct. 376, 116 L.Ed.2d 327 (1991).

■ Additionally, this Court has the inherent power to impose sanctions, including attorney's fees, on counsel for bad faith conduct. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 46, 111 S.Ct. 2123, 2134, 115 L.Ed.2d 27 (1991). This Court's inherent power to impose sanctions for such conduct is not displaced by statute or by rule. *Id.* at 46–48, 111 S.Ct. at 2134–35. Sanctions may be imposed "to promote judicial efficiency, and to deter abuse of judicial process." *Quiroga,* 934 F.2d at 505. Under this inherent power, a court may award attorney's fees and require that counsel pay them personally, if it is found that he acted in bad faith. *Landon v. Hunt,* 938 F.2d 450, 454 (3d Cir.1991).

■ A review of the Boykin I and Boykin II complaints makes clear that the Plaintiffs had no basis in fact or law for their defamation claims and their assertion of civil rights offenses against the media defendants was patently frivolous. Indeed, Mr. Mirin did not have in his possession any articles claimed to be false and defamatory at the time he filed the Boykin I and Boykin II complaints or at the time he refused to dismiss Boykin II.

Although Mr. Mirin's good faith in filing Boykin I is doubtful, it cannot be seriously questioned that the filing and pursuit of the claims in Boykin II were frivolous and outrageous. First, when the Boykin II complaint was filed, Eyerly was no longer a defendant in this matter and had been dismissed pursuant to a state court order. Second, at the time the Boykin II complaint was removed to federal court, the Plaintiffs' identical claims against the media defendants had already been dismissed on their merits. Third, after having been given written notice that Plaintiffs could not assert claims as to Defendant Eyerly, that Plaintiffs' state law claims were time-barred and that the media defendants intended to seek counsel fees, Mr. Mirin refused to withdraw these claims.

In fact, Mr. Mirin was put on notice two times by the media defendants and once by this Court that his state law claims as to the Press–Enterprise were time-barred. Mr. Mirin, however, continued to pursue these time-barred claims. Thus, Mr. Mirin unreasonably and unnecessarily forced the media defendants to file a second motion to dismiss and to participate in preparing the case management plan for this case.

Mr. Mirin's clients would in no way have been prejudiced by the dismissal of the Boykin II complaint as it presented issues identical to those raised in the Boykin I complaint.

By continuing to maintain this action, by continuing to cause the media defendants to incur significant legal fees and expense, and by continuing to burden this Court with the identical arguments already rejected, Mr. Mirin has violated his duty to proceed in good faith and in a manner designed to achieve justice. The media defendants should simply not be subjected to such outrageous conduct and be burdened with the cost and expense of repeatedly litigating the same claims.

We are of the view that sanctions should be imposed on Mr. Mirin because he has engaged in bad faith, harassing and vexatious litigation by pursuing these claims, which has so multiplied the proceedings in this case as to cause unnecessary burden and expense on the media defendants.

■ The standard utilized to calculate the proper award of attorney's fees under 28 U.S.C. § 1927 is the lodestar method. The lodestar fee is calculated by multiplying a reasonable hourly rate by the number of hours reasonably expended on the suit. *Matthews v. Freedman,* 128 F.R.D. at 207. *See also Hensley v. Eckerhart,* 461 U.S. 424,

433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983).

■ The sanctions hearing, which totalled seven days including the 6–day initial hearing and 1 day supplemental hearing, was inordinately delayed by the unreasonable conduct of Mr. Mirin and his grossly evasive and lengthy answers to questions while on the stand, as indicated by this Court's Findings of Fact No. 91 and 103. Mr. Mirin's constant and flagrant interruption of this Court, despite repeated warnings, further delayed the sanctions hearing. Moreover, Mr. Mirin's repeated attempts to offer evidence remote and irrelevant to the issues before the Court also unreasonably and unnecessarily delayed these proceedings, as indicated by this Court's Findings of Fact No. 141–44.

Under these circumstances, the total number of hours expended by counsel for the media defendants in connection with this matter was entirely necessary and reasonable and represents the excess attorney's time spent by them as a result of the bad faith and sanctionable conduct of Mr. Mirin, as indicated by this Court's Findings of Fact No. 148, 149, 163, 164, 172, 173, 174, and 182.

In addition, the hourly rates claimed by each individual attorney assisting in the representation of the media defendants reflect the actual hourly rates paid by the media defendants and are reasonable based on the respective skills and experience of counsel for such defendants, as indicated by this Court's Findings of Fact.

The lodestar amount of fees is $50,372.00, as indicated by this Court's Finding of Fact No. 184. The total expenses incurred in connection with the presentation of both sanctions hearings is $2,608.47. These expenses were reasonably incurred and represent excess expenses caused by the sanctionable conduct of Mr. Mirin, as indicated by this Court's Findings of Fact No. 185–189. As a result, the lodestar of fees and expenses caused by the sanctionable conduct of Mr. Mirin and incurred by the media defendants is $52,980.47. We are of the view that there are no reasons to depart upwards or downwards from the lodestar.

We are aware that the amount of sanctions imposed may seem high. However, they reflect the regular hourly rates of counsel for the media defendants and to impose less would put additional costs on the media defendants. Were we to do otherwise, we may deter an aggrieved party from instituting an action for sanctions because a wrongdoer may so multiply the sanctions proceedings that the wronged party may be required to pay additional counsel fees in connection with the motion for sanctions, thus chilling its right to move for sanctions.

## IV. Conclusions of Law.

■ 1. Pursuant to 28 U.S.C. § 1927, this Court may impose sanctions on counsel for engaging in conduct which "multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927 (1980).

2. Under § 1927, counsel "may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927 (1980).

3. Robert S. Mirin acted in willful bad faith in this case as set forth in the findings of fact.

4. The legal theories enunciated by Mr. Mirin were pursued and maintained in bad faith.

5. Robert S. Mirin acted in this case in a manner which was unreasonable and the legal theories on which he relied relating to libel and invasion of privacy were without foundation.

6. In light of Robert S. Mirin's conduct in continuing to pursue claims of libel and invasion of privacy against the media defendants in bad faith after being notified that such claims were time-barred, sanctions should be imposed upon plaintiff's counsel.

7. Sanctions will be imposed upon Robert S. Mirin to deter abuse of the judicial process, to promote judicial efficiency and to penalize him for his bad faith conduct.

8. The standard utilized to calculate the proper award of attorney's fees under 28 U.S.C. § 1927 is the lodestar method.

9. The total number of hours expended by counsel for the media defendants in connection with this action is reasonable.

10.  The hourly rates claimed by each individual attorney assisting in the representation of the media defendants are reasonable based on their respective skills and experience.

11.  The lodestar amount of fees incurred by the media defendants is $50,372.00.

12.  The lodestar amount of $50,372.00 is reasonable.

13.  The lodestar of fees and expenses incurred by counsel for the media defendants as a result of Robert S. Mirin's willful bad faith and unreasonable conduct was $52,980.47.

14.  The lodestar amount of fees represents the fair and reasonable value of the services rendered, taking into account the novelty and complexity of the issues presented in the case, the special skills and experience of counsel involved, the quality of the representation and the result achieved.

15.  Robert S. Mirin unnecessarily and in bad faith protracted the proceedings regarding the Motion for Sanctions.

16.  Robert S. Mirin's conduct before and during the hearing on the Motion for Sanctions caused undue burden and expense to the media defendants.

17.  The media defendants should not be penalized in their request for an award of sanctions because of the unreasonable conduct of Robert S. Mirin in protracting the proceeding and thereby increasing the cost to defendants.

18.  It would violate and frustrate the Congressional policy behind 28 U.S.C. § 1927 to permit an attorney to make the process of seeking sanctions against him for willful, bad faith conduct so prohibitively expensive so as to deter parties from seeking to recover sanctions.

19.  Robert S. Mirin should bear full legal responsibility for the fees and costs reasonably incurred as a result of the unnecessarily protracted sanctions proceedings.

20.  There is no reason to depart upwards or downwards from the lodestar.

21.  Sanctions will be imposed on Robert S. Mirin in the amount of $52,980.47.