623 F.2d 224
 104 L.R.R.M. (BNA) 2493, 88 Lab.Cas. P 12,077
 ITHACA COLLEGE, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
and
Ithaca College Faculty Association, NYSUT-AFT, Intervenor.
ITHACA COLLEGE FACULTY ASSOCIATION, NYSUT-AFT, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
and
Ithaca College, Intervenor.
 Nos. 530, 536, 820, Dockets 79-4150, 79-4176 and 79-4210.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 22, 1980.
Decided May 19, 1980.
 
 William L. Bergan, Syracuse, N. Y. (Bond, Schoeneck & King, Syracuse, N. Y., Tracy H. Ferguson, Syracuse, N. Y., of counsel), for petitioner-intervenor Ithaca College.
 Bernard F. Ashe, Albany, N. Y. (Kevin H. Harren, Albany, N. Y., of counsel), for petitioner-intervenor Ithaca College Faculty Ass'n, NYSUT-AFT.
 Charles P. Donnelly, Washington, D. C. (N.L.R.B., Washington, D. C., William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Washington, D. C.), for respondent.
 Before MEDINA, MULLIGAN and MESKILL, Circuit Judges.
 MULLIGAN, Circuit Judge:
 
 
 1
 On December 8, 1977, the Ithaca College Chapter of the American Association of University Professors (AAUP) filed a petition with the Regional Office of the National Labor Relations Board (the Board) for certification as the collective bargaining representative of the full-time and part-time faculty members of Ithaca College (the College). On February 3, 1978, the Regional Director issued a decision and directed an election in a unit consisting "of all full-time faculty members employed by Ithaca College at its Ithaca, New York location but excluding all . . . part-time faculty, and supervisors as defined in the (National Labor Relations) Act." The election was held on March 3, 1978 with the AAUP, the Ithaca College Faculty Association (ICFA), and "no union" as the choices. None of the three choices on the ballot received a majority of the votes cast and pursuant to the rules of the Board, a run-off election between the first and second choices, "no union" and the ICFA, was scheduled for September 29, 1978.
 
 
 2
 On July 31, 1978, this Court rendered its decision in NLRB v. Yeshiva University, 582 F.2d 686 (2d Cir. 1978), aff'd, --- U.S. ----, 100 S.Ct. 856, 63 L.Ed.2d 115 (1980), which held that the full-time faculty at Yeshiva University were managerial or supervisory employees under the National Labor Relations Act (the Act), 29 U.S.C. § 151 et seq. (1976), and were therefore ineligible for inclusion in a bargaining unit. In our opinion we indicated that the Board precedents which had been routinely applied in cases involving faculty members in private institutions of higher learning were arbitrary and inconsistent with the Act.
 
 
 3
 Not surprisingly, on August 4, 1978, the College filed a motion for a rehearing requesting that the record be reopened in light of the Yeshiva decision. The response of the Regional Director was prompt and to the point. By letter dated August 25, he stated in relevant part:
 
 
 4
 Your motion is denied. The Board may decide to petition the United States Supreme Court for a writ of certiorari to review the Second Circuit's decision in Yeshiva. In any case, whether the Board seeks review of this decision, or not, Regional Directors are bound to follow and apply Board rather than court precedent, at least until the Supreme Court speaks to the contrary or the Board decides to acquiesce in the decision of the Court of Appeals. For these reasons your motion is denied.
 
 
 5
 The College's request for review of the Regional Director's decision was denied by the Board on September 26, 1978 "as it raise(d) no substantial issues warranting review." While this request was pending, the College sought judicial intervention to postpone the run-off election and to order a hearing on the Yeshiva claim. This relief was denied for jurisdictional reasons. Ithaca College v. Thomas W. Seeler, Regional Director, NLRB, No. 78-CV-485 (N.D.N.Y. Sept. 26, 1978), motion for stay pending appeal denied, No. 78-6150 (2d Cir. Sept. 28, 1978).
 
 
 6
 The run-off election was conducted as scheduled on September 29, 1978, and ICFA won by a narrow margin, 116 votes to 109. The College tried to challenge each faculty vote to no avail. It then filed objections to the election, reasserting its challenge of the faculty votes based on the Yeshiva decision, and alleging various other grounds for voiding the election which, given our disposition of this case, we need not detail. In a report issued on November 8, 1978, the Regional Director rejected each of the College's objections and recommended that the ICFA be certified as the bargaining representative of Ithaca's faculty. His report and recommendation were adopted by the Board in February of 1979.
 
 
 7
 The College, seeking to obtain review of its Yeshiva claim, refused to bargain with the ICFA, and on March 29, 1979, the Regional Director issued an unfair labor practice complaint alleging violations of sections 8(a)(5) and (a)(1) of the Act. The College answered by claiming, inter alia, that its full-time faculty members were managerial or supervisory employees under the Act. The General Counsel of the Board moved for summary judgment on the ground that the College was not raising any issues that had not already been determined during the representation proceedings. In opposition, the College submitted affidavits from the Deans of each of its Schools which in considerable detail pointed out that the faculty possessed a large measure of authority over matters affecting academic policy. The affidavits showed that the faculty has effectively determined curricula and admissions standards, and has had an instrumental role to play in the creation and disbanding of several Schools within the College. In addition, the faculty has determined what teachers are to be hired, promoted, and tenured, and has participated in the selection of all of the Deans, a Vice President and the President of the College. In short, the affidavits were directed to the criteria held by this Court in Yeshiva to establish the managerial or supervisory status of full-time faculty members.
 
 
 8
 Thereafter, the General Counsel made a motion to transfer the proceedings to the Board, to strike the College's affirmative defenses, and to grant summary judgment. ICFA made a motion for the award of attorneys' fees. By Decision and Order dated August 22, 1979, and reported at 244 N.L.R.B. No. 54, the Board granted the General Counsel's motion, but denied ICFA's request for attorneys' fees on the ground that the College's defenses were not "patently frivolous." Responding to the College's continued reliance on the Yeshiva case, the Board, in a footnote, stated, "With all due respect to the view expressed by the Second Circuit in Yeshiva, supra, we shall adhere to our position until the Supreme Court has passed on the matter."
 
 
 9
 The case then came before this Court on petitions of the College and ICFA to review, and a cross-application of the Board to enforce, the order of the Board pursuant to sections 10(f) and 10(e) of the Act. Two days before oral argument was scheduled, the Supreme Court of the United States affirmed our decision in Yeshiva. NLRB v. Yeshiva University, --- U.S. ----, 100 S.Ct. 856, 63 L.Ed.2d 115 (1980). During oral argument we asked for supplemental briefs addressed to the issue of what remedy was appropriate here in view of the Supreme Court affirmance. The Board now seeks a remand for further proceedings. ICFA still urges that we enforce the order and continues to ask for attorneys' fees. The College requests that we grant summary judgment in its favor and vacate the Board's order.
 
 
 10
 * The Board has offered us several explanations for its refusal to conduct a hearing on whether the criteria set forth in this Court's Yeshiva opinion applied to Ithaca College's faculty. We find none of these explanations acceptable.
 
 
 11
 First, the Board claims that the College's request for a hearing was untimely. The record belies that claim. The letter from the Regional Director denying the Board's motion for a rehearing made no mention of untimeliness, but rather, relied on the notion that "Regional Directors are bound to follow and apply Board rather than Court precedent. . . ." The history of the proceedings shows that the College was assiduous in its efforts to raise a Yeshiva claim. Moreover, if there truly was a procedural hurdle that prevented the hearing, the fact that the Supreme Court affirmed in Yeshiva should not have made any difference, and yet the Board is now willing to conduct a hearing.
 
 
 12
 Next, the Board argues that it was "not unreasonable" for it to deny a hearing given the fact that ICFA, and even the College, might have sought review in the Circuit for the District of Columbia instead of in the Second Circuit. See section 10(f) of the Act. However, the possibility that the D.C. Circuit would have been the court to review the Board's order was so remote that it does not seem likely that the Board actually considered it. Certainly the College was not going to seek review in the D.C. Circuit when it had a favorable precedent in the Second Circuit. And even if ICFA had petitioned for review in the D.C. Circuit first, the College could have moved to transfer the proceedings to the Second Circuit. 28 U.S.C. § 2112(a) (1976). Since most of the parties resided in the Second Circuit, and since ICFA's aggrievement with the Board's order was insignificant in comparison to the College's aggrievement, the transfer would have assuredly occurred. See J. L. Simmons Co. v. NLRB, 425 F.2d 52, 55-56 (7th Cir. 1970), transferred, 444 F.2d 895 (D.C. Cir.), cert. denied, 404 U.S. 986, 92 S.Ct. 447, 30 L.Ed.2d 371 (1971).
 
 
 13
 Third, the Board states that it did not consider it necessary to conduct a hearing during the proceedings below because it had not "acquiesced" in this Court's decision in Yeshiva. Apparently, it is a practice of the Board to refuse to follow unfavorable decisions from the Courts of Appeals even in instances such as this where it is likely that the case will come up for review before the very court with which the Board disagrees. See, e. g., Bonanno Linen Service, Inc., 243 N.L.R.B. No. 140 (1979) (case originating in the 1st Circuit, Board refusing to follow decisions of 2d, 3d, 5th, 8th, and 9th Circuits); Allegheny General Hospital, 239 N.L.R.B. No. 81 (1978), enforcement denied, 608 F.2d 965 (3d Cir. 1979) (case originating in 3d Circuit, Board refusing to follow decision of that Circuit); Andrew G. Grutka, 238 N.L.R.B. No. 216 (1978) (case originating in 7th Circuit, Board refusing to follow decision of that Circuit).
 
 
 14
 The position of the Board is one in which we cannot acquiesce. While deference is to be given to an agency's interpretation of the statute it administers, see Ford Motor Co. v. NLRB, 441 U.S. 488, 497, 99 S.Ct. 1842, 1848, 60 L.Ed.2d 420 (1979); NLRB v. Iron Workers, 434 U.S. 335, 350, 98 S.Ct. 651, 660, 54 L.Ed.2d 586 (1978), it is the courts that have the final word on matters of statutory interpretation. See International Brotherhood of Teamsters v. Daniel, 439 U.S. 551, 565-66, 99 S.Ct. 790, 799-80, 58 L.Ed.2d 808 (1979); SEC v. Sloan, 436 U.S. 103, 118-19, 98 S.Ct. 1702, 1712, 56 L.Ed.2d 148 (1978); Volkswagenwerk Aktiengesellschaft v. Federal Maritime Commission, 390 U.S. 261, 272, 88 S.Ct. 929, 935, 19 L.Ed.2d 1090 (1968); Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803); Safir v. Gibson, 417 F.2d 972, 976 (2d Cir. 1969), cert. denied, 400 U.S. 850, 91 S.Ct. 57, 27 L.Ed.2d 88 (1970). "The position of any administrative tribunal whose hearings, findings, conclusions and orders are subject to direct judicial review is much akin to that of a United States District Court," Morand Bros. Beverage v. NLRB, 204 F.2d 529, 532 (7th Cir.), cert. denied, 346 U.S. 909, 74 S.Ct. 241, 98 L.Ed. 407 (1953), and as must a district court, an agency is bound to follow the law of the Circuit. See Mary Thompson Hospital, Inc. v. NLRB, No. 79-1374, 621 F.2d 858 (7th Cir. March 5, 1980); Allegheny General Hospital v. NLRB, 608 F.2d 965, 969-70 (3d Cir. 1979); NLRB v. Gibson Products, 494 F.2d 762, 766 (5th Cir. 1974); Stacey Manufacturing Co. v. Commissioner, 237 F.2d 605, 606 (6th Cir. 1956); cf. Cleveland v. Federal Power Commission, 561 F.2d 344, 346 (D.C. Cir. 1977) (agency must follow law of the case).
 
 
 15
 Of course, we do not expect the Board or any other litigant to rejoice in all the opinions of this Court. When it disagrees in a particular case, it should seek review in the Supreme Court. During the interim before it has sought review or while review is still pending, it would be reasonable for the Board to stay its proceedings in another case that arguably falls within the precedent of the first one. However, the Board cannot, as it did here, choose to ignore the decision as if it had no force or effect. Absent reversal, that decision is the law which the Board must follow. The Board cites no contrary authority except its own consistent practice of refusing to follow the law of the circuit unless it coincides with the Board's views. This is intolerable if the rule of law is to prevail.
 
 As the Third Circuit has recently stated:
 
 16
 A decision by this court, not overruled by the United States Supreme Court, is a decision of the court of last resort in this federal judicial district. Thus our judgments . . . are binding on all inferior courts and litigants in the Third Judicial District, and also on administrative agencies when they deal with matters pertaining thereto. . . . (T)he Board is not a court nor is it equal to this court in matters of statutory interpretation. Thus, a disagreement by the NLRB with a decision of this court is simply an academic exercise that possesses no authoritative effect. . . . For the Board to predicate an order on its disagreement with this court's interpretation of a statute is for it to operate outside the law.
 
 
 17
 Allegheny General Hospital, supra, 608 F.2d at 970.
 
 
 18
 Finally, the Board claims that this Court's Yeshiva decision dealt with "policy" and therefore was not binding on the Board. However, this Court's opinion in Yeshiva made clear that it was not deciding a question of policy, but rather, applying the language of the National Labor Relations Act in accordance with its prior judicial interpretations. See Yeshiva, supra, 582 F.2d at 697, 705. Indeed, "(t)his court has neither the expertise nor the constitutional authority to make 'policy' as that word is commonly understood. That role is reserved to the Congress and, within the bounds of delegated authority, to the (Board). But in matters of interpreting the 'law' the final say is constitutionally committed to the judiciary." WNCN Listeners Guild v. FCC, 610 F.2d 838, 854-55 (D.C. Cir. 1979) (en banc), cert. granted, --- U.S. ----, 100 S.Ct. 1273, 63 L.Ed.2d 598 (1980) (citations omitted).
 
 
 19
 We conclude that the Board's failure to conduct a hearing was arbitrary, capricious, and unlawful.
 
 II
 
 20
 We thus come to the question of how we should dispose of this matter. ICFA has requested that we enforce the Board's order as though the Supreme Court had never affirmed Yeshiva. It is quite obvious that Yeshiva is applicable and even the Board no longer seeks enforcement of its order. ICFA's claim for attorneys' fees was properly rejected by the Board. The continued claim of the College that the principles of Yeshiva be applied cannot without any show of reason be described as "frivolous", which is essentially the Board's test in deciding whether or not counsel fees are appropriate. See Orion Corp., 210 N.L.R.B. 633 (1974), aff'd, 515 F.2d 81 (7th Cir. 1975).
 
 
 21
 Neither can we grant the College's request that summary judgment be granted in its favor. Although the College did not move for summary judgment in the proceedings below, the General Counsel of the Board did, and this Court clearly has the power to order the entry of summary judgment to the non-movant given the appropriate circumstances. Abrams v. Occidental Petroleum Corp., 450 F.2d 157, 165 (2d Cir. 1971). This case, however, does not present the appropriate circumstances. As Moore notes in his Treatise, "(c)are should, of course, be taken by the (appellate) court to determine that the party against whom summary judgment is rendered has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried." 6 Moore's Federal Practice P 56.12 at 334 (1976). The General Counsel's motion for summary judgment below was predicated, and granted, on the notion that the College had not raised any new issues before the Board that it could not have raised during the representation hearing. The motion was addressed to that procedural issue; it was not concerned with the substantive issue of whether the faculty members at Ithaca College were managers. And all throughout the proceedings below, the Board's actions in refusing to acknowledge the Yeshiva decision effectively precluded ICFA from presenting its case on those grounds.
 
 
 22
 Nor do we grant the Board's request for a remand. Although we are empowered, we are not required to remand. We may adjust our relief to the exigencies of the case in accordance with the equitable principles which govern judicial action. Ford Motor Co. v. NLRB, 305 U.S. 364, 373-74, 59 S.Ct. 301, 306-07, 83 L.Ed. 221 (1939); NLRB v. Colonial Haven Nursing Home, 542 F.2d 691 (7th Cir.), petition for rehearing denied, 542 F.2d 707, 709 (1976).
 
 
 23
 Here ICFA, whose interests are primarily at stake, has sought no remand, recognizes no factual issues, and in its supplemental brief filed after the Supreme Court's affirmance of Yeshiva and after oral argument still maintains that "the litigation in Yeshiva is of absolutely no import to this case." The Board had the opportunity to address the issue of faculty status and it improperly and arbitrarily refused to resolve that issue. This has exposed the College to needless expense and unwarranted prejudicial publicity. The election was close and hotly contested. The passage of time created by the Board's refusal to address these issues has undoubtedly been accompanied by changes in faculty personnel. All of these equitable factors, as well as the position of ICFA, lead us to conclude that a remand is here not appropriate. See NLRB v. Producers Cooperative Assoc., 457 F.2d 1121 (10th Cir. 1972); NLRB v. Sidran, 181 F.2d 671 (5th Cir. 1950).
 
 
 24
 This determination is of course without prejudice to the right of ICFA, or any other group, to file a representation petition with the Regional Office of the Board seeking to represent whatever employee group it deems appropriate within the Act as interpreted by the Supreme Court in Yeshiva.
 
 
 25
 The College's petition for review is granted and the proceedings are dismissed. ICFA's petition for review and the Board's cross-petition for enforcement are denied.