**Francis J. LOFTUS, Plaintiff,**

v.

**SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, et al., Defendants.**

**No. CIV. A. 93–2471.**

United States District Court,
E.D. Pennsylvania.

May 7, 1998.

H. Francis De Lone, Jr., Philadelphia, PA, for Francis J. Loftus.

Nicholas J. Staffieri, Septa Legal Div., Philadelphia, PA, for Southeastern Pennsylvania Transp. Authority.

Robert W. Kosman, Brodie, Techner, Rubinsky & Ford, Philadelphia, PA, for Transport Workers Union of Philadelphia, Local 234, Transport Workers Union of America/AFL–CIO.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Before the Court is an Order to Show Cause why counsel should not be sanctioned under the authority of 28 U.S.C. § 1927 for continuing to pursue the instant lawsuit once it became clear during the course of litigation that the lawsuit was frivolous.

As Judge Schwarzer has noted: "[o]f all the duties of the judge, imposing sanctions on lawyers is perhaps the most unpleasant." [1] Yet, none is more important. Because the willful prosecution of frivolous claims not only inflicts costs on innocent parties, but also consumes judicial resources to the detriment of meritorious claims, the imposition of sanctions upon willful transgressors is essential to preserving public confidence in our system of justice. With this important role of sanctions in mind, and for the reasons stated below, the Court concludes: that the claim stated in the plaintiff's complaint [2] became frivolous during the course of litigation; that the conduct of plaintiff's counsel in prosecuting a frivolous claim constituted willful bad faith; and that under the circumstances of the case, imposing a monetary sanction of $4,000 upon plaintiff's counsel is appropriate.

## I. BACKGROUND

Plaintiff's counsel in this matter is H. Francis deLone, Jr., Esquire. On May 10, 1993, Mr. deLone filed a complaint on behalf

---

**1.** William W. Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look,* 104 F.R.D. 181, 205(1985).

**2.** The plaintiff's original complaint was amended at the direction of the Court to provide greater specificity to the conspiracy allegations. References to the complaint in this opinion refer to the amended complaint rather than the original complaint.

of the plaintiff, Francis J. Loftus, against the Southeastern Pennsylvania Transportation Authority ("SEPTA") and the Transport Workers Union of Philadelphia, Local 234 ("Local 234"). The complaint alleged that SEPTA and Local 234 violated 42 U.S.C. § 1983 by conspiring to prevent Mr. Loftus from taking his grievance to arbitration following his discharge from employment, and that such actions violated his Fourteenth Amendment right to procedural due process. The case was assigned to the Honorable Eduardo C. Robreno.

On September 6, 1994, Mr. deLone filed a two count complaint in this Court against the same defendants on behalf of Joseph G. Dykes. *See Dykes v. SEPTA,* 1996 WL 548946, No. 94–5478 (1996). Count II of the complaint asserted the identical claim which Mr. deLone was pressing on Mr. Loftus's behalf in the instant lawsuit. The *Dykes v. Southeastern Pennsylvania Transp. Authority,* 68 F.3d 1564 (1995) case was assigned to the Honorable Herbert J. Hutton. By orders dated December 19, 1994 and December 29, 1994, Judge Hutton dismissed both counts of the complaint. Mr. deLone, acting on Mr. Dykes's behalf, appealed both dismissals to the Third Circuit.

On November 7, 1995, the Third Circuit affirmed Judge Hutton's dismissal of both counts of the *Dykes* complaint holding that as to Count II, Mr. Dykes did not have a cognizable procedural due process claim under 42 U.S.C. § 1983 because, under state law, Mr. Dykes had a right to petition the court of common pleas to order arbitration over his employment grievance; a procedure sufficient to satisfy the due process clause. *Dykes v. SEPTA,* 68 F.3d 1564, 1572 (3d Cir.1995), *cert. denied,* 517 U.S. 1142, 116 S.Ct. 1434, 134 L.Ed.2d 556 (1996). 1572. Plaintiff then petitioned the Supreme Court of the United States for certiorari. Certiora-

ri was denied on April 15, 1996. *Dykes,* 517 U.S. 1142, 116 S.Ct. 1434, 134 L.Ed.2d 556.

Between November 7, 1995 when the Third Circuit rendered its decision in *Dykes* and January 30, 1996 when the discovery period in the instant action ended, the parties engaged in extensive discovery regarding a number of issues in this case. Thereafter, on February 27, 1996, SEPTA and Local 234 each filed a motion for summary judgment. Both defendants argued that based upon the Third Circuit's decision affirming the dismissal of Count II in *Dykes,* the instant case had lost its legal merit. Mr. deLone, on behalf of Mr. Loftus, opposed the defendants' motions for summary judgment. On January 13, 1998,[3] the Court granted defendants' motions for summary judgment finding that the *Dykes* case was indistinguishable from Mr. Loftus's claim and indeed controlled the outcome of this case. (Ct. Order 1/13/98 at n. 1, doc. no. 63).

After summary judgment was granted in their favor, SEPTA and Local 234, as prevailing parties, filed motions for the award of attorney fees pursuant to 42 U.S.C. § 1988(b). Because § 1988 only authorizes the award of attorney fees against losing parties and not counsel representing the losing party, and because defendants could not show that plaintiff himself (as opposed to his lawyer) either knew or should have known that the cause of action alleged in the complaint had become frivolous after the *Dykes* decision, the Court denied the motions.

The conduct of plaintiff's counsel, which was placed on the record during the hearing on the defendants' motions for attorney fees, however, raised in the Court's mind serious issues about the actions of plaintiff's counsel in this litigation. Therefore, the Court issued a rule to show cause why sanctions under § 1927[4] should not be imposed upon

---

**3.** This matter was stayed between April 19, 1996 and June 20, 1997 for reasons unrelated to this discussion.

**4.** *Sanctions under Rule 11 are not available in this case because final judgment has already been entered in this case by the Court. See Mary Ann Pensiero, Inc. v. Lingle,* 847 F.2d 90 (3d Cir.1988)(adopting supervisory rule which requires "counsel seeking Rule 11 sanctions [to]

file their motions before entry of final judgment in district court"); *Simmerman v. Corino,* 27 F.3d 58, 62 (3d Cir.1994)(applying supervisory rule adopted in *Pensiero* to sua sponte Rule 11 motions of the court). The *Pensiero* rule does not apply to sanctions imposed pursuant to § 1927. *See Matthews v. Freedman,* 128 F.R.D. 194, 205–07 (E.D.Pa.1989)(allowing sanctions under § 1927 when Rule 11 sanctions were barred by *Pensiero* rule); *ADW, Inc. v. Lutheran Social Mis-*

plaintiff's counsel for continuing the litigation of this case after the claim had become frivolous. The parties were afforded an opportunity to make written submissions, and to offer evidence and legal arguments at a hearing.[5]

## II. ANALYSIS

### A. *Attorney Fees Under 28 U.S.C. § 1927*

Section 1927 of Title 28 of the United States Code provides:

> any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. Under § 1927, sanctions are directed at the offending attorney and may not be imposed upon the client. *Boykin v. Bloomsburg University of Pennsylvania,* 905 F.Supp. 1335 (M.D.Pa.1995)(citing *Williams v. Giant Eagle Markets, Inc.,* 883 F.2d 1184, 1190 (3d Cir.1989)).

"In determining whether imposition of the sanctions contemplated by § 1927 is called for, the question to be addressed is whether the attorney sought to be sanctioned is fairly chargeable with actions taken which are tantamount to willful bad faith." *Costello v. Daddario,* 710 F.Supp. 1035, 1037

(1989)(citing *Baker Indus. v. Cerberus Ltd.,* 764 F.2d 204, 209 (3d Cir.1985)). The Court of Appeals for the Third Circuit has stated that the "intentional advancement of a baseless contention that is made for an ulterior purpose, e.g., harassment or delay" may be indicative of bad faith. *Ford v. Temple Hospital,* 790 F.2d 342, 347 (3d Cir.1986). When a claim is advocated despite the fact that it is patently frivolous or where a litigant continues to pursue a claim in the face of an irrebuttable defense, bad faith can be implied. *See Hicks v. Arthur,* 891 F.Supp. 213 (E.D.Pa.1995)(imposing § 1927 sanctions because claims plainly barred by federal and state law); *Boykin,* 905 F.Supp. at 1335 (finding bad faith when attorney pursued claim after being informed that it was time barred). Additionally, "even if a lawsuit was initially filed in good faith, sanctions may be imposed on an attorney for all costs and fees incurred after the continuation of the lawsuit which is deemed to be in bad faith." *Id.* at 1446–47 (citing *Fred A. Smith Lumber Co. v. Edidin,* 845 F.2d 750 (7th Cir.1988); *Matthews v. Freedman,* 128 F.R.D. 194, 207 (E.D.Pa.1989)). "Courts, however, should be cautious in awarding counsel fees for fear of chilling the [litigants] exercise of constitutional rights." *Hicks,* 891 F.Supp. at 214(citing *Kutska v. California State College,* 564 F.2d 108, 110 (3d Cir.1977))(other citations omitted).

A number of factors serve to convince the Court that the continuing prosecution of

---

*sion Society,* 1989 WL 83407 (E.D.Pa. July 19, 1989)("[Defendant] is correct that *Pensiero* does not extend to 28 U.S.C. § 1927.").

With respect to the Court's inherent power to sanction, the Supreme Court has instructed that "[where] there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power. But if in the informed discretion of the court, neither the statute nor the rules are up to the task, the court may safely rely on its inherent powers." *Chambers v. NASCO,* 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). Having found that § 1927 is "up to the task," the Court will rely on § 1927 rather than its inherent powers.

5. A lawyer is entitled to certain due process protections before a court may sanction the lawyer for his or her conduct in litigation before the

court. *Simmerman v. Corino,* 27 F.3d 58, 64 (3d Cir.1994)(citing *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 767, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980)). These protections include notice and an opportunity to be heard, and apply whether the sanctions are initiated by an adversary or by the Court sua sponte. *Id.* The due process requirements are satisfied by issuing upon the lawyer who is the target of the sanctions an order to show cause why sanctions should not be imposed and by providing the named lawyer an opportunity to respond. *Id.*

Here, the applicable due process requirements have been satisfied. On February 17, 1998, the Court issued upon Mr. deLone a rule to show cause order. At a hearing on February 27, 1998, Mr. deLone was permitted an opportunity to present evidence and to argue against the imposition of sanctions. Mr. deLone was also afforded an opportunity to file legal memoranda which he did on two separate occasions.

this case by Mr. deLone, once the Third Circuit had decided the *Dykes* case, was in willful bad faith. *See Ford,* 790 F.2d at 347. First, the material facts underlying the *Dykes* case and Mr. Loftus's case were identical, i.e., both the *Dykes* plaintiff and the instant plaintiff were terminated by SEPTA for violation of SEPTA's drug and alcohol testing policies and each sought to arbitrate their grievances pursuant to the same collective bargaining agreement. Second, the legal theories advanced in Count II of the *Dykes* case were identical to those advanced in the instant case, i.e., each plaintiff claimed that SEPTA and Local 234 conspired to deprive him of his due process right to pursue his grievances to arbitration. Third, the Third Circuit's decision in *Dykes* that the claim was flawed because, under state law, Dykes had a right to petition the court of common pleas to compel arbitration, was equally applicable to the instant case. Fourth, on November, 16, 1995, nine days after the Third Circuit rendered its decision in *Dykes,* counsel for SEPTA sent a letter to Mr. deLone which cited *Dykes* and informed Mr. deLone that, based on *Dykes,* the claim asserted in *Loftus* was without legal or factual basis. Fifth, Mr. deLone knew from past experience of his duty to discontinue litigation when an intervening event had rendered the litigation frivolous because he had been previously sanctioned in this court for pursuing a case after the Third Circuit had decided a case with "uncannily parallel fact pattern and a similar litany of legal theories" in a manner adverse to Mr. deLone's case. *See Morris v. Orman,* 1992 WL 398363 at *5 (E.D.Pa. Dec.31, 1992).

In his defense, Mr. deLone appears to argue that, under our adversarial system of justice, he is not obligated to bring to the court's attention developments which are adverse to his client. Mr. deLone believes that such duty rests solely with his adversaries. In Mr. deLone's words:

> its not up to me to ... stop representing my client because something happened. It's up to [opposing counsel to have brought the *Dykes* result to the attention of the Court], they're advocates of the other side.

(Hrg. Trscpt. at 5). Mr. deLone's view of a lawyer's obligations to the court in the face of the frivolity of his case is mistaken.

As the Third Circuit has observed: "[a]n attorney's obligation to the court is one that is unique and must be discharged with candor and with great care." *Baker Industries v. Cerberus Ltd.,* 764 F.2d 204, 212 (3d Cir.1985)(affirming imposition of § 1927 sanctions on counsel who failed to comply with terms of court approved stipulation not to challenge arbitration award); *see also* Pennsylvania Rules of Professional Conduct Rule 3.3 (describing attorney's duty of candor to the tribunal); Pennsylvania Rules of Professional Conduct Rule 3.1 ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous ..."). Simply put, once Mr. Loftus's claim lost legal merit, Mr. deLone had a duty to withdraw the case. As an officer of the court, Mr. deLone was not free to press on with a meritless claim until forced to surrender by the legal artillery of his adversaries.

Mr. deLone also argues that the Third Circuit decision in *Dykes* did not quite render his case frivolous because he immediately sought review of the decision from the United States Supreme Court. Again, Mr. deLone is mistaken in his view of the law. At the time that the Third Circuit's decision in *Dykes* was announced, it became the law of the Circuit, and Mr. deLone was bound by its terms unless and until it was overturned by the Supreme Court. *Allegheny General Hospital v. National Labor Relations Board,* 608 F.2d 965 (3d Cir.1979)(stating that Third Circuit decisions are binding on "all inferior courts and litigants in the Third Judicial Circuit"); *Critical Mass Energy Project v. NRC,* 975 F.2d 871 (D.C.Cir.1992)(holding that circuit court decisions bind circuit "unless and until overturned by the court en banc or by Higher Authority"). In the absence of a stay, seeking discretionary review of an appellate court's decision from the Supreme Court does not license an attorney to ignore the precedential value of that decision in other pending cases, as though it had no force or effect. *See Ithaca College v. Na-*

*tional Labor Relations Board,* 623 F.2d 224 (2d Cir.1980)(holding that decision cannot be ignored simply because review is being sought).

In light of the factors cited by the Court and in view of Mr. deLone's meritless defenses, the Court concludes that by failing to concede that the result in *Dykes* doomed this case and by failing to withdraw it, Mr. de-Lone acted in willful bad faith. The result of Mr. deLone's actions was to unreasonably and vexatiously multiply the proceedings.

### B. *Establishing the Amount of the Sanctions*

 "Once a finding of bad faith has been made, the appropriateness of assessing attorney fees against counsel under § 1927 is a matter for the district court's discretion." *Ford,* 790 F.2d at 347. "To properly exercise this discretion, the district court must balance the equities between the parties" by looking to mitigating factors and the circumstances surrounding the case. *Id.* The Court "may award attorney fees whenever overriding circumstances indicate the need for such a recovery." *Id.* On the other hand, the Court may choose not to award attorney fees or may reduce the attorney fees awarded if, in balancing the equities, the Court determines that the interests of justice would be better served by such action. *Id.* at 347, n. 6.

 First, the Court will determine the full amount of attorney fees incurred after November 7, 1995, the date when this lawsuit was rendered frivolous by the Third Circuit's decision in *Dykes.* In calculating the amount of attorney fees in § 1927 cases, courts have generally applied the loadstar method. *Matthews v. Freedman,* 128 F.R.D. 194, 207 (E.D.Pa.1989)(calculating attorney fees under § 1927). The lodestar is calculated by multiplying a reasonable hourly rate by the number of hours reasonably expended on the suit. *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); *Matthews,* 128 F.R.D. at 207 (awarding attorney fees under § 1927).

 In connection with their request for attorney fees under § 1988, the defendants supplied affidavits supporting their claim that the hourly rate of $150,00, which is the rate that was paid by the defendants, is the prevailing rate for defending lawsuits of this type. The defendants also submitted itemized bills to demonstrate that the time spent was reasonable. When plaintiff was afforded an opportunity to challenge the amount of the attorney fees claimed by the defendants, plaintiff generally objected to the fact that SEPTA had incurred twice as many hours of service as Local 234, however, he presented no evidence challenging the reasonableness of either the hourly rate charged or the amount of hours spent by defendants' counsel in this matter.[6] Therefore, based on evidence presented by the defendants and in the absence of evidence to the contrary presented by Mr. deLone, the Court concludes that both the hourly rate and the amount of hours spent by defense counsel are reasonable. *See Hicks v. Arthur,* 891 F.Supp. 213, 216 (E.D.Pa.1995)(finding amount billed reasonable in absence of opposing evidence).

Applying the loadstar method to the figures provided by defendants, the Court concludes that, after November 7, 1995, SEPTA's counsel expended 101.8 hours on the case. At a rate of $150.00 per hour, SEPTA incurred attorney fees in the amount of $15,-270.00. As for Local 234, after November 7, 1995, its attorney expended 55.3 hours causing Local 234 to incur $8,295.00 in attorney fees. The combined total of attorney fees incurred by the defendants is $23,565.00.

 Next, the Court turns to an analysis of the mitigating factors and circumstances surrounding this case to determine the proper amount of sanctions. In § 1927 cases, district courts are granted wide discretion in ascertaining an appropriate sanction. *Ford,* 790 F.2d at 347. The court is not required to impose sanctions on Mr. deLone simply because the defendants have demonstrated that they incurred attorney fees. Nor should a

---

**6.** Plaintiff made the general objection to attorney fees when responding to defendants' motion for attorney fees under 42 U.S.C. § 1988. Mr. de-Lone did not raise any objections to the reason-ableness of the attorney fees in memoranda relating to the Rule to Show Cause Order issued upon him.

sanction be imposed that is greater than necessary to achieve the public policy objectives underlying the statute. In the final analysis, the Court is called upon to balance the equities to determine what sanction will best serve the interests of justice. *Id.* at 347, n. 6. While Mr. deLone did not offer any financial evidence of the nature of his practice, the Court will consider the fact that Mr. deLone is a sole practitioner whose practice is primarily dedicated to representing plaintiffs in civil rights actions. The Court will also consider the in terrorem impact a large award in this case could have on other civil rights counsel who may prematurely abandon meritorious but novel claims for fear that, if unsuccessful, counsel could face financial ruin. Balancing the equities, and in light of the public purpose to be served by imposing § 1927 sanctions, the Court will exercise its discretion and impose a sanction of $4,000 to be divided equally between the defendants. Payment shall be made within ten days of the date of this Memorandum.

## ORDER

**AND NOW** this **7th** day of **May, 1998,** following a rule to show cause hearing on February 27, 1998, and upon consideration of memorandum by H. Francis deLone, Jr., Esq. in response to the Court's Order to Show Cause (doc. no. 72), SEPTA's memorandum of law on the issue of possible sanctions against Mr. deLone (doc. no. 78), Local 234's letter and memorandum dated March 9, 1998, and response to defendants' memos by Mr. deLone (doc. no. 79), it is hereby **ORDERED** that, for the reasons set forth in the Court's Memorandum of this date, H. Francis deLone, Jr., Esq. shall pay SEPTA and Local 234 $2,000.00 each to compensate them for attorney fees incurred after November 7, 1995. It is **FURTHER ORDERED** that payment shall be made within ten days of the date of this Order.

**AND IT IS SO ORDERED.**